**Michael P. REGO, Appellant,**

**v.**

**Joanna M. REGO, Appellee.**

**No. S–13650.**

Supreme Court of Alaska.

Aug. 12, 2011.

Bonnie J. Coghlan, Law Office of Rita T. Allee, P.C., Fairbanks, for Appellant.

Joanna Rego, Fairbanks, pro se, Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

*OPINION*

CARPENETI, Chief Justice.

## I. INTRODUCTION

A child lived with both of his parents for the first two years of his life. His parents then separated, and they shared custody of the child for about a year, first under an informal agreement and later under the terms of the divorce decree. Less than a month after the divorce decree was entered, the father notified the mother that he intended to relocate to his former home state. Following a hearing, the superior court ruled that the planned move constituted a change of circumstances that justified custody modification. Applying a best interests analysis, the superior court awarded custody to the mother if the father moved. Because the superior court applied the correct legal standard concerning the planned move, and did not abuse its discretion in weighing the best interest factors, we affirm.

## II. FACTS AND PROCEEDINGS

Joanna and Michael Rego married in Fairbanks on September 18, 2004. Michael had moved to Alaska from New Jersey, where he had worked as a gas technician. He has family in both New Jersey and the Fairbanks area. Since high school, Joanna has lived primarily in the area around Fairbanks and Nenana; she has an extended network of family and friends around Fairbanks.

Joanna and Michael had one child together, a son, Dante, who was born in April 2006. The parties agree that Dante has the ordinary needs of a child his age. Joanna's three daughters from prior relationships lived with Michael and Joanna during their marriage. Joanna, Michael, the custody investigator, and several other witnesses agreed that

Dante has a close relationship with his half-sisters, especially with the middle one.

Michael has stated that during their marriage he was "primarily responsible for Dante's day to day care while [Joanna] worked nights." By contrast, Joanna has asserted that she "was primarily responsible for Dante's day to day care" during their marriage, including staying home with Dante during his first year of life. When Dante turned one, Michael and Joanna agreed that she would begin to work a late shift at Fred Meyer and stay with Dante until Michael got home from work. Joanna testified that after Dante turned two, she and Michael agreed that she should increase her hours at work to raise the family income. Michael testified that he watched Dante during the evenings when Joanna was at work.

### A. Divorce And Initial Custody Agreement

Joanna filed for divorce in July 2008. When the parties separated, Joanna and her daughters moved out. Michael remained in the Moose Creek home that he and Joanna had purchased together.

After the separation, Dante spent time with each parent. During the first five months, a formal visitation schedule was not yet in place. On December 19, 2008, the parties filed a child custody, visitation, and support agreement with the court.

The agreement detailed how Michael and Joanna would cooperate on various child-rearing issues including child support, health insurance, tax deductions, and permanent fund dividends. The agreement provided for shared physical custody on a 70/30 schedule where Michael would have five overnights with Dante each week and Joanna would have two overnights with Dante each week

on days when she was not working. The agreement set out a special schedule for holidays. It provided for the possibility of relocation as follows:

> Neither party plans to move from the greater Fairbanks, Alaska area at this time. If a party plans to move from this area, that party shall give the other party 180 days notice prior to the move. This notice is for the purpose of allowing enough time to attempt to reach an agreement regarding custody and visitation or to allow one of the parties to file a motion for the court to determine the custody and visitation arrangement that is in the child's best interests under the circumstances that will exist after the party's move. Unless otherwise ordered by the court, the child will remain with the parent living in the Fairbanks community until further court order.

The parties agreed to "work together in rearing the child." Joanna and Michael each cared for Dante and contributed to his continued development between December 2008, when the agreement was reached, and September 2009, when the case went to trial. Under the agreement, Michael had custody of Dante from 6 p.m. on Saturdays to 2:30 p.m. on Thursdays, while Joanna had Dante for the remainder.

### B. Motion For Modification

Michael lost his job in Alaska in December 2008, the same month that the divorce decree was entered. Michael testified that because he had been tardy and absent from work several times during the final months of his marriage, he was "the easiest one to let go" during the recent economic decline. Michael later found a job and "prospects for career advancement" in New Jersey, his former home state.[1]

---

1. Michael testified that he looked for work in the Fairbanks area, including looking for work at the University of Alaska at Fairbanks, the Alaska Railroad, and union halls. In response to questioning from the court, Michael stated that he decided to move to New Jersey three or four months after he was let go from his job. Michael testified that in New Jersey, there are more employment opportunities to work in his field as a small-appliance gas technician. He testified that he secured interim employment at Vanguard Pest

Control and hopes that after passing a journeyman test, he will be able to secure a job with a New Jersey utility company where he once worked.

When questioned by the court, Michael testified that he decided to move to New Jersey "about three or four months after [he] was let go from [his] job." There was also evidence in the record that Michael made this decision earlier: In a January 5 filing, Joanna asked the court to

In January 2009, Michael notified Joanna of his intent to leave the Fairbanks area. The parties sought to reach a new agreement regarding ongoing custody and visitation, but were unsuccessful.

In March, Michael filed a motion requesting that the court award him primary custody, allow Dante to move with him to New Jersey, and provide for reasonable visitation with Joanna. Joanna opposed the modification. She, too, sought primary custody of Dante with reasonable visitation for the other parent.

### C. Custody Investigator's Report

On Michael's motion, the superior court appointed Ted Sponsel as a custody investigator. The investigator concluded that each parent was "in serious need of parenting training," but "both parents clearly love Dante and ... he is unlikely to be harmed when in the care of either parent." The investigator added, "in fact, [Dante's] precociousness, assertiveness and generally genial temperament are a testament to [Joanna and Michael's] good parenting thus far."

Sponsel made the following recommendations: If Michael remained in Fairbanks, Dante should stay with Michael four nights per week and Joanna's custody should be increased to three nights per week. If Michael relocated to New Jersey, Michael should have primary custody of Dante while Joanna should have summers and vacations with Dante. At trial, the investigator clarified that, if Michael moved to New Jersey and was awarded primary custody, Dante should stay with Joanna for the entire summer rather than following a customary graduated schedule.[2]

### D. Superior Court Trial And Post–Trial Orders

Superior Court Judge Michael A. MacDonald conducted a three-day trial in Sep-tember 2009 and heard extensive testimony about Dante's needs, Michael's and Joanna's parenting behaviors, and other circumstances affecting Dante's development. In addition to the facts discussed above, the court heard testimony about Joanna's relationship history; problems at the end of Joanna's and Michael's marriage; Joanna's close relationships with her daughters' paternal grandmothers; and Michael's plans to enroll in parenting classes.

Following the trial, the superior court awarded Joanna primary physical custody during the school year, setting out a schedule for summer and holiday visitation with Michael. The court concluded that Michael had legitimate reasons for moving to New Jersey. But the court did not accept the custody investigator's recommendation that Dante should move to New Jersey with Michael, noting "both the father and the custody investigator overstate the relationship between the father and son when they characterize it as primary and the mother's as secondary." According to the court, Dante had primary bonds of love and affection with both parents, each parent was able to care for him, and it would be desirable to maintain custody with either parent. In awarding primary custody to Joanna, the court reasoned that Joanna was the more experienced parent, better able to provide for Dante's needs (particularly his need to maintain his sibling relationships) and more willing to facilitate Dante's relationship with Michael.

Michael appeals the superior court's custody modification order. He has stayed in the Fairbanks area pending this appeal and filed a motion for interim custody. On December 28, 2009, Judge MacDonald held a hearing on this motion.[3] He concluded that as long as Michael lives in Fairbanks, there has been no change of circumstances that requires modifi-

---

prevent Michael from taking Dante to New Jersey at the end of the month.

The court found that Michael's reasons for moving were legitimate "[a]lthough his testimony regarding the timing of the decision [was] not credible." In particular, the court found that "as of January 2009[,] Michael intended to leave Fairbanks."

**2.** A customary graduated schedule gives the noncustodial parent one week of summer visitation for every year of the child's age.

**3.** Pursuant to our order of February 11, 2010, the transcript of this post-trial hearing is included in the record before us.

cation and the pre-modification custody arrangement will remain in effect.

## III. STANDARD OF REVIEW

Whether the superior court applied the correct legal standard is a question of law that we review de novo, "adopting the rule of law that is most persuasive in light of precedent, reason and policy."[4] Trial courts have broad discretion in determining whether a proposed child-custody modification is in the child's best interests.[5] We will set aside the superior court's best interests determination only if the trial court abused its discretion or if the fact findings on which the determination is based are clearly erroneous.[6] Assigning disproportionate weight to particular factors while ignoring others is an abuse of discretion.[7] We will conclude that a factual finding is clearly erroneous if, based on a review of the entire record, the finding leaves us with a definite and firm conviction that a mistake has been made; we may conclude a finding is clearly erroneous even if there is some evidence in the record to support the finding.[8] "We give 'particular deference' to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[9]

## IV. DISCUSSION

In appealing the custody modification order that grants Joanna primary physical custody of Dante when Michael moves to New Jersey, Michael argues that the superior court committed legal error by holding his decision to move to New Jersey against him. He further argues that the superior court abused its discretion by assigning too much weight to Dante's sibling relationships and geographical stability while overlooking Joanna's dangerous behaviors and the stability offered in Michael's household. Joanna filed pro se a brief, which defends the superior court's custody award.

Alaska Statute 25.20.110 authorizes courts to modify child-custody and visitation awards if (1) there has been a change in circumstances that justifies modification and (2) the modification is in the best interests of the child.[10] The moving party is required to show a substantial change in circumstances, as a threshold matter, before the court moves on to consider the best interests analysis.[11] "We have held that a custodial parent's decision to move out-of-state … amounts to a [substantial] change in circumstances as a matter of law."[12] Both parties acknowledge that Michael's decision to relocate to New Jersey constitutes a change in circumstances that justifies modification under AS 25.20.110.

Two statutes guide the superior court's best interests determination: AS 25.20.110, the modification statute cited above, and AS 25.24.150.[13] The modification statute directs courts to consider "the past history of the parents with respect to their compliance with

4. *McQuade v. McQuade*, 901 P.2d 421, 423 n. 3 (Alaska 1995) (citing *Cox v. Cox*, 882 P.2d 909, 913 (Alaska 1994)) (internal quotation marks omitted).

5. *See Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005) (citing *Smith v. Weekley*, 73 P.3d 1219, 1222 (Alaska 2003)).

6. *Id.* (citing *Hamilton v. Hamilton*, 42 P.3d 1107, 1111 (Alaska 2002)).

7. *Id.* (citing *Barrett v. Alguire*, 35 P.3d 1, 5·n. 5 (Alaska 2001)).

8. *Id.* (citing *Jenkins v. Handel*, 10 P.3d 586, 589 (Alaska 2000)).

9. *Id.* (citing *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001)).

10. *Melendrez v. Melendrez*, 143 P.3d 957, 962 (Alaska 2006) (affirming custody modification where both prongs satisfied).

11. *Maxwell v. Maxwell*, 37 P.3d 424, 426 (Alaska 2001) (concluding that superior court was not required to make best interests determination where moving party failed to show substantial change in circumstances).

12. *Barrett*, 35 P.3d at 6 (quoting *Acevedo v. Liberty*, 956 P.2d 455, 457 (Alaska 1998)) (internal quotation marks omitted) (alteration in original).

13. Alaska Statute 25.24.150 governs judgments for custody that arise from divorce actions and other proceedings. Under the statute, courts have broad authority to make, modify, and vacate custody and visitation orders where necessary or proper. *See* AS 25.24.150(a).

... agreements relating to the child or to other children." [14] Alaska Statute 25.24.150(c) directs the court to "determine custody in accordance with the best interests of the child," considering the following nine factors:

(1) the physical, emotional, mental, religious, and social needs of the child;

(2) the capability and desire of each parent to meet these needs;

(3) the child's preference if the child is of sufficient age and capacity to form a preference;

(4) the love and affection existing between the child and each parent;

(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(6) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, except that the court may not consider this willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child;

(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;

(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child; and

(9) other factors that the court considers pertinent.

Alaska Statute 25.24.150(d) directs that the court may consider "only those facts that directly affect the well-being of the child." [15]

■ We have decided a number of custody-modification appeals arising from parents' plans to relocate.[16] As we have explained, in such cases the superior court must assess "whether there are legitimate reasons for the move ... [and] the impact of the move on the child." [17] A move is legitimate if it is not primarily motivated by a desire to make visitation more difficult.[18] In this case, the superior court found that Michael's move to New Jersey was "motivated by a desire to seek employment in Newark and to return to his hometown where he has extended family." The court added, it was "not motivated by a desire to interfere with the relationship between Dante and his mother." Thus, the superior court concluded that the reasons for Michael's move were legitimate. Joanna does not contest this conclusion on appeal.

■ Once the relocating parent has made the threshold showing that a legitimate move justifies custody modification, there is no presumption favoring either parent when the court considers the child's best interests.[19] The relocating parent secures primary custody by showing that living with that parent in a new environment better serves the child's interests than living with the other parent in the current location. In undertaking this analysis, the superior court must assume that the legitimate move will take place and consider the consequences that the move will have on the child—both positive and negative.[20]

---

14. AS 25.20.110(b).

15. AS 25.24.150(d). *See also S.N.E. v. R.L.B.,* 699 P.2d 875, 878 (Alaska 1985) ("We have often endorsed the requirement that there be a nexus between the conduct of the parent relied on by the court and the parent-child relationship.").

16. *See, e.g., Moeller–Prokosch v. Prokosch,* 99 P.3d 531, 533 (Alaska 2004) [hereinafter *Moeller–Prokosch III* ].

17. *Barrett,* 35 P.3d at 6 (quoting *Moeller–Prokosch v. Prokosch,* 27 P.3d 314, 317 (Alaska 2001) [hereinafter *Moeller–Prokosch I* ] ) (internal quotation marks omitted).

18. *Moeller–Prokosch I,* 27 P.3d at 316.

19. *See McQuade v. McQuade,* 901 P.2d 421, 424 (Alaska 1995) (approving the proposition that "if parents have joint physical custody and one parent seeks to move the child, 'the appropriate standard would be similar to a *de novo* review that would be made at an initial custody determination' ").

20. *Eniero v. Brekke,* 192 P.3d 147, 150 (Alaska 2008) ("[W]e have not suggested that the best interests analysis cannot take into account how a move would exacerbate problems such as a parent's willingness to foster communication be-

Michael's briefing draws an analogy between the facts of this case and the *Moeller–Prokosch v. Prokosch* cases. In those cases, we made it clear that the superior court may not hold a legitimate move against a relocating parent.[21] The *Moeller–Prokosch* cases set the governing standard for custody decisions involving parental relocation. Once a parent has shown that the decision to relocate is a legitimate one, then that parent is not required to defend the move a second time by showing that life with that parent is superior to life with both parents in the same city.[22] As Michael's argument recognizes, we take seriously the alleged infringement on a custodial parent's right to relocate. However, Michael's position in the present case would require us to treat the superior court's decision with considerable and unwarranted skepticism. Based on our review of the record in this case, we are satisfied that the superior court did not hold a legitimate move against Michael. We address Michael's arguments below.

### A. The Superior Court Did Not Commit Legal Error By Improperly Conditioning Michael's Custody Award On Staying In Alaska.

Michael argues that the superior court applied an improper standard by failing to assume that the move to New Jersey would take place. According to Michael,

"the trial court compared the life Dante had with both parents in one community to the life he would have if Michael relocated." This kind of analysis places the moving parent at a prohibited disadvantage; it requires the moving parent to compensate for the benefits of more regular contact with both parents. Had the superior court in this case required Michael to bear the undue burden that he suggests, its order would not stand. However, having scrutinized the record before us in its entirety, we cannot conclude, as Michael suggests, that the superior court "misunderstood" the proper legal standard.

When it undertakes a best interests analysis, the superior court is required to assume that a parent's legitimate proposed move will take place.[23] We have directed trial courts to undertake "symmetric consideration" of the child's experience living with each parent, assuming the proposed relocation will take place.[24] In this case, the superior court acknowledged that it was bound by these rules; it identified the proper analysis and cited the governing case law extensively.

The superior court compared Dante's life with Michael in New Jersey (and Joanna in Fairbanks), to Dante's life with Joanna in Fairbanks (and Michael in New Jersey). In particular, the superior court determined that if Dante moved to New Jersey with Michael, "[t]here will be few ... positive

tween the child and the other parent."); *Fardig v. Fardig*, 56 P.3d 9, 13 n. 12 (Alaska 2002) ("[T]he impact of any potential move may be taken into consideration by the court in assessing the best interests of the child."); and *Moeller–Prokosch I*, 27 P.3d at 316 ("The best interests analysis necessarily will include assessing the impact of the parent's move on the child.").

21. In *Moeller–Prokosch I*, we explained that "[n]o Alaska law allows a court to require a custodial parent to forego relocation if custody with that parent remains in the child's best interests and relocation is not for an illegitimate reason." 27 P.3d at 317. In the next case, we added:

> [T]he court should not hold the move against the party who proposes to move. The court should not find her to be, because of the move, "selfish and unwilling to promote an open and loving relationship between" the child and the other parent. Legitimately motivated moves are a common feature of "today's mobile society." Such moves would be unfairly deterred if courts were to hold that the moving parent

has demonstrated by her desire to move a parental deficiency or weakness. *Moeller–Prokosch v. Prokosch*, 53 P.3d 152, 155 (Alaska 2002) [hereinafter *Moeller–Prokosch II*]. In *Moeller–Prokosch III*, we made clear that this analysis "requires symmetric consideration of the consequences to [the son] both if [his mother] leaves with him and if she leaves without him." 99 P.3d at 536.

22. *Moeller–Prokosch II*, 53 P.3d at 156 (directing the superior court to "take the move as a given and determine whether it would be in the best interests of [the son] to be in the custody of his father in Alaska or of his mother in Florida").

23. *See id.* at 156.

24. *Moeller–Prokosch III*, 99 P.3d at 535–36. *See also Silvan v. Alcina*, 105 P.3d 117, 121–22 (Alaska 2005) ("Unlike *Moeller–Prokosch III*, there is no evidence to indicate that the superior court did not individually address and consider both parents' situations.").

interactions with his mother and sisters." In contrast, the court identified "Joanna's patience and respect for her daughters' relationships with their fathers" and concluded that Joanna would do a "better job" than Michael of facilitating Dante's contact with his non-custodial parent. Contrary to Michael's assertion, the superior court did not "disregard[ ] the fact that Michael will be moving from Fairbanks." Nor did the superior court disregard Michael's important role in Dante's life. Rather, the court concluded that while maintaining contact with each parent would serve Dante's needs, non-parental relationships tipped the balance in favor of awarding Joanna primary custody. While the superior court's analysis does not detail every aspect of Dante's future in Alaska and in New Jersey, the court gives sufficiently detailed and "symmetric consideration" to Dante's experience if Michael took him to New Jersey or relocated to New Jersey without him.

Michael also appears to argue that even if the superior court formally applied the proper rules, its analysis was "improperly colored by the court's wish to prevent the move." He points to the court's "confrontational tone" during the hearing in asserting that the court directed a "degree of hostility toward Michael based on his decision to leave Fairbanks." We have previously examined a custody-hearing transcript—to determine if the court's analysis was colored by a desire to prevent a move—and concluded that the superior court's "line of questioning ... suggests possible preoccupation with the irrelevant question whether [a parent] should be permitted to relocate, rather than the impact of [the] assumed move."[25] We similarly scrutinized the record before us in this case. We conclude that Michael's position is not supported by the record and would require us to apply undue skepticism to the superior court's decision.[26]

Like Michael, we are concerned by the superior court's suggestion at a pre-trial con-

ference that Dante's best interests would be maximized if Michael remained in Fairbanks. However, these suspect comments do not outweigh the evidence that the superior court took time to carefully consider the governing rules before deciding the case. Despite its apparent suspicions about Michael's move at the beginning of the trial, the superior court was convinced by the close of the trial that Michael's decision to relocate was legitimate; the court issued an oral finding to that effect after closing arguments. Although the court acknowledged its persistent concerns about separating Dante from his sisters, it affirmed that it would "take no inference from the move against Mr. Rego." At the conclusion of the trial, the court made clear that it would deliberate and review the applicable cases. The court's written decision in this case confirms the care with which the court approached the issues before it.

Michael points out that at trial, the superior court questioned him about his decision to move and was particularly interested in the detrimental effect of relocation on Dante's relationship with his siblings. Michael suggests that the superior court's questioning indicates unwarranted concerns about his decision to relocate, but this questioning bore on relevant issues around which there may have been uncertainty before the trial. Although the court is prohibited from holding a legitimate move against Michael, the court is required to determine whether the move was, in fact, for a legitimate purpose.[27] The pretrial briefing was evasive about the circumstances under which Michael lost his job, stating only that his "employment ended." Considering that Michael notified Joanna of his intent to leave Fairbanks less than a month after they formalized the custody agreement, it is unsurprising that at its earliest opportunity, the court sought clarification about Michael's decision to relocate. Questioning the custody investigator about how the move would affect Dante's relationship with his sisters is also relevant under our

---

**25.** *Moeller–Prokosch III*, 99 P.3d at 536 n. 18.

**26.** *See, e.g., McDanold v. McDanold*, 718 P.2d 467, 470 (Alaska 1986) ("We will not substitute our judgment or hypothesize on what unstated factors may have influenced the trial court.").

**27.** *See, e.g., Barrett v. Alguire*, 35 P.3d 1, 6 (Alaska 2001) ("[T]he court must ... assess[ ] whether there are legitimate reasons for the move.").

law; this line of inquiry fits squarely within the "best interests" analysis. Michael's claim that the trial court "expressed the view that both parents should reside in the same community" exaggerates the trial court's expressed concerns about the effects of the move on Dante. After reviewing the record in this case, we are not convinced that the court's ultimate conclusions were "improperly colored" by a view that both Dante's parents should remain in Fairbanks.

Michael next argues that the superior court's "decision is crafted to prevent [him] from relocating away from Fairbanks." Michael correctly points out that if he remains in Fairbanks, Dante will continue to live primarily with his father, but if Michael leaves Fairbanks, Joanna will get custody. We have made clear that "the trial court does not have the authority to place restrictions on a parent's ability to relocate." [28] However, the superior court is authorized to order "alternative custody arrangements dependent on whether the move occur[s]." [29] We have recognized:

> Often the definiteness of a parent's move is uncertain or unclear, especially where the move may depend on the court's custody determination itself. A court may be faced with a situation where, before an initial custody determination has been made, a parent seeking custody will condition his or her move plans on obtaining custody. Or the court may be confronted with a custo-

dial parent who would choose not to move if he or she cannot maintain custody. [30]

Michael testified convincingly that he intends to move to New Jersey and the court appears to have credited this testimony. Nevertheless, there is a possibility that Michael will decide to stay in Fairbanks and an attendant possibility that Michael's decision will be influenced by the court's custody orders. The chance that the superior court's decision will influence Michael's decision to move does not justify reversing the superior court's order.

 Michael argues that "[t]he effect of the trial court's decision would be to require every parent to remain in the community where that parent's child was born, or relinquish primary custody." Michael's argument exaggerates the effect of affirming the superior court. Michael is right that in some cases where a parent undertakes a legitimate move, the child's best interests are met by keeping the child in the custody of the moving parent. [31] However, the law does not guarantee that a relocating parent can maintain (or obtain) primary custody. [32] A parent's decision to relocate—including a legitimate decision to relocate—changes the best interests calculus. [33] We have "consistently avoided mandating rigid rules for making custody determinations." [34] Instead, "such determinations are based upon the facts and circumstances of each particular

**28.** *Moeller–Prokosch I*, 27 P.3d 314, 317 (Alaska 2001).

**29.** *Silvan v. Alcina*, 105 P.3d 117, 122 (Alaska 2005) (citing *Moeller–Prokosch I*, 27 P.3d at 317 n. 8); *see also Chesser v. Chesser–Witmer*, 178 P.3d 1154, 1157 (Alaska 2008) (affirming a one-year custody order because "we decline to undo the current arrangement and interrupt a perhaps more gradual process") (citing *Chesser–Witmer v. Chesser*, 117 P.3d 711, 720 (Alaska 2005)).

**30.** *Moeller–Prokosch I*, 27 P.3d at 316.

**31.** *See, e.g., Veselsky v. Veselsky*, 113 P.3d 629, 632–36 (Alaska 2005) (affirming custody award to relocating mother); *Moeller–Prokosch III*, 99 P.3d 531, 535 (Alaska 2004) ("[O]ur decisions recognize that courts may properly award primary custody to the relocating parent when that parent offers superior emotional stability."); *Vachon v. Pugliese*, 931 P.2d 371, 380 (Alaska 1996)

(concluding that custody belonged with "primary caregiver" who relocated to Massachusetts); *House v. House*, 779 P.2d 1204, 1207–08 (Alaska 1989) (affirming custody award to relocating father).

**32.** *Blanton v. Yourkowski*, 180 P.3d 948, 953–55 (Alaska 2008) (affirming grant of custody to father where mother planned possible move to Texas); *Silvan*, 105 P.3d at 120–23 (Alaska 2005) (affirming grant of custody to parent who remained in Alaska).

**33.** *Barrett v. Alguire*, 35 P.3d 1, 6 (Alaska 2001) ("The court is to assess the best interests in light of all of the relevant factors, including the impact of the move on the child.").

**34.** *McQuade v. McQuade*, 901 P.2d 421, 425 (Alaska 1995) ("[I]n custody matters, 'there is no hard and fast rule[.]' ") (quoting *Nichols v. Nichols*, 516 P.2d 732, 736 (Alaska 1973)).

case."[35] In the present case, important evidence is contested. The superior court analyzed this evidence with due consideration for the statutory best interest factors and governing standards. The fact that the court's ultimate order is not favorable to Michael and may complicate his decision to move does not disrupt this conclusion. The superior court did not improperly condition an award of custody to Michael upon him staying in Alaska.

### B. The Superior Court Did Not Abuse Its Discretion In Determining That Placing Dante With Joanna Would Be In Dante's Best Interests.

Michael argues that the trial court incorrectly analyzed the best interests criteria in awarding Joanna custody of Dante. He further argues that the trial court made clearly erroneous factual findings in the course of its best interests analysis. We address the challenged factual errors as they arise in our discussion of the statutory best interests criteria.

### 1. The superior court did not place undue emphasis on protecting the relationship between Dante and his half-sisters.

Michael argues that the court "placed undue emphasis on protecting the relationship between Dante and his elder half-sisters and ignored Dante's other needs, in particular his need to maintain the relationship with his primary parent and his need for continuing stability." We have recognized that while it is often desirable not to separate siblings in the course of custody disputes, there is no rigid standard for

weighing the importance of maintaining sibling bonds against other factors.[36] In this case, the court heard testimony about Dante's close relationship with his half-sisters from Joanna, Michael, and other witnesses, including the custody investigator who stated, "[i]t is absolutely a horrible thing that he won't—that he's not around his siblings as much." This evidence supports the superior court's findings that Dante has a particular social need to maintain his sibling relationships and that "in Joanna's care, Dante can continue his relationship with his sisters and be spared a significant negative impact that would necessarily result from the move."

Michael challenges the court's reasoning by suggesting that Dante's relationships with his sisters could be maintained even if Dante were in New Jersey. Michael criticizes the superior court's reliance on the custody investigator's conclusion that "severing these relationships would not be in Dante's best interests"[37] and draws attention to evidence that suggests Michael would help foster Dante's relationships with his sisters. Michael points out that the record could have supported a different conclusion about Dante's needs and his parents' ability to meet those needs. However, that possibility does not compel reversal. The record supports the court's conclusion.

Michael contends that it was inappropriate to place so much weight on Dante's relationships with his sisters in part because these sisters may not stay in the same household, or even in Fairbanks, as Dante grows up. The court's assessment in a child custody

**35.** *Id.; see also Chesser v. Chesser–Witmer,* 178 P.3d 1154, 1157 (Alaska 2008) (recognizing that superior court has "discretion to fashion custody awards designed to meet the unique needs of the individuals involved") (quoting *Deininger v. Deininger,* 835 P.2d 449, 451 (Alaska 1992) (internal quotation marks omitted)).

**36.** *McQuade,* 901 P.2d at 425–26 (concluding superior court did not impermissibly favor sibling bonds over parental bonds).

**37.** Michael correctly points out that the superior court may have improperly attributed the word "sever" to the custody investigator when it stated, "[t]he child custody investigator testified that moving from Fairbanks and severing these bonds [between Dante and his sisters] would be 'horrible' for Dante." Michael does not appear to challenge this as a clearly erroneous factual finding. In any case, this mis-attribution is, at most, harmless error. The custody investigator testified that being separated from his sisters would be "horrible" for Dante. The overall thrust of the court's sentence—that moving away from his sisters and not maintaining very regular contact with them would be horrible for Dante—does not misrepresent the evidence in the record.

case is necessarily somewhat prospective;[38] the trial court considers which living arrangement is likely to be in the child's best interests in the future. While the court cannot be certain about how Dante's relationships with his half-sisters and other family members will develop, that is not enough to disturb the trial court's conclusion that granting Joanna custody will best serve Dante's social needs.

Michael criticizes the superior court's invocation of *Melendrez v. Melendrez*,[39] *Rhodes v. Rhodes*,[40] and *Nichols v. Nichols*[41] "to support the premise that siblings should not be separated." Michael misconstrues the superior court's treatment of these cases. The trial court did not apply this "premise" as an absolute rule; rather, it acknowledged that courts have considered sibling bonds among other considerations.

Nevertheless, Michael distinguishes his case from *Melendrez, Rhodes,* and *Nichols* because those cases involved full siblings rather than half-siblings.[42] Joanna rejects the relevance of this distinction. We agree with Joanna: As noted above, the inquiry into the importance of sibling bonds depends on the particular circumstances of each case. While there may be a higher likelihood that Dante's half-siblings could end up living in a different household from Dante and Joanna, the difference between full-and half-siblings is not determinative. The superior court assessed Dante's needs and best interests and, in light of the record, we defer to that determination unless it falls outside the range of what is reasonable.

Michael also distinguishes his case from *Melendrez* because in that case the children had always lived together in the same household, whereas here Dante spent a significant amount of time in his father's household without his sisters. Again, whether the siblings in *Melendrez* spent more or less time together than Dante and his siblings is not the relevant inquiry. What matters is whether the superior court's findings and conclusions are supported by the particular facts of this case. As noted above, they are.

Finally, Michael challenges the finding that "[f]or his entire life Dante has lived with his three half-sisters." He argues that this is clearly erroneous because Dante had lived primarily with his father and apart from his sisters for more than a year immediately preceding the hearing on Michael's motion for modification. The parties do not contest that since the divorce, Dante has spent five nights per week at his father's home. However, as Joanna points out, the evidence also supports finding that Dante has lived in the same community with his half-sisters and had regular contact with them, including living in the same household for at least two days each week almost every week of his life. In fact, the sentences immediately following the challenged sentence in the superior court's decision are:

> There are strong bond[s] of love and affection existing between Dante and his sisters. He had an intimate, daily relationship with his sisters during the marriage. He has continued in that close relationship with his sisters since separation and lives with them when he is in his mother's custody.

From this, it is clear that the trial court understood that Michael and Joanna's separation reduced the amount of time Dante spent in the same household as his half-sisters. While the court could have been

**38.** See, e.g., *Meier v. Cloud*, 34 P.3d 1274, 1279 (Alaska 2001) ("The [custody] statute's plain language requires the court to view continuity and stability both prospectively and retrospectively: the court must examine both the time that a child 'has lived' in a stable environment and 'the desirability of maintaining [that] continuity.'") (quoting AS 25.24.150(c)).

**39.** 143 P.3d 957 (Alaska 2006) (affirming superior court decision to place four children in custody of father where mother sought custody of two children).

**40.** 370 P.2d 902, 903 (Alaska 1962) (noting "the desirability of keeping the children of the family together so that they may enjoy the normal condition of childhood of growing up together as brothers and sisters").

**41.** 516 P.2d 732, 736 (Alaska 1973) ("The question of whether or not it is necessary to separate children must depend upon the facts and circumstances of each particular case.").

**42.** *Melendrez,* 143 P.3d at 958; *Nichols,* 516 P.2d at 732–34; *Rhodes,* 370 P.2d at 903.

more precise in describing Dante's lifelong relationship with his sisters, we do not accept Michael's narrow reading of the phrase "lived with his three half-sisters." In turn, we conclude that this finding was not clearly erroneous.

We conclude that there is extensive testimony in the record about Dante's close relationship with his half-sisters, and that therefore the superior court did not err in finding that maintaining contact with his sisters is an important social need that Joanna is best able to meet.

### 2. The superior court did not ignore Dante's need to maintain his relationship with Michael.

■■■ Michael argues that the superior court failed to give proper weight to Dante's relationship with his father. Alaska Statute 25.24.150(c) directs courts to consider "the love and affection existing between the child and each parent" [43] and "the capability and desire of each parent to meet [the child's] needs." [44] We have held that

> in determining the best interests of a child, the court need not discuss each statutory factor in detail; the court's findings will be sufficient if they "give us a clear indication of the factors which [the court] considered important in exercising its discretion or allow us to glean from the record what considerations were involved." [45]

In the present case, the superior court found that Dante has primary bonds of love and affection with his father and that Michael is able to meet Dante's needs. As Michael points out, the superior court did not elaborate further on Dante's bond with Michael or the stability Dante experiences in Michael's home. Nevertheless, the court followed the statutory mandate in considering Dante's relationship with Michael. The absence of further elaboration about Dante and Michael's relationship is not error, because the superior court's decision clearly indicates

the factors it considered important in awarding primary custody to Joanna, namely her willingness and ability to foster Dante's relationship with his father, siblings, and extended family.

In the same vein, Michael also argues that the trial court improperly ignored Dante's relationships with Michael's extended family and friends in New Jersey. But the superior court did make reference to Michael's New Jersey family in its order. Moreover, neither AS 25.24.150 nor AS 25.20.110 mandates consideration of the child's extended family as part of the best interests analysis in a custody modification. As noted above, we have directed trial courts to undertake "symmetric consideration" of the child's experience living with each parent. Michael does not argue specifically that the greater attention to family connections in Fairbanks is a prohibited "asymmetric" analysis. In any case, the superior court's greater attention to Dante's family connections in Fairbanks is supported by the record; there was considerably less evidence presented about Dante's relationships with family in New Jersey. The superior court did not abuse its discretion by failing to discuss Dante's connections to his New Jersey family in greater detail.

### 3. The superior court did not err in evaluating the stability of Dante's environment.

■■■ Michael argues that the superior court "disregarded the stability Dante has enjoyed while in the primary care of his father." The superior court is required to consider "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity" under AS 25.24.150(c)(5). The court is authorized to evaluate "the children's needs, not just in relation to each parent, but in relation to the totality of the circumstances they were likely to encounter in their respective parents' homes." [46] In the present case,

---

**43.** AS 25.24.150(c)(4).

**44.** AS 25.24.150(c)(2).

**45.** *Ebertz v. Ebertz,* 113 P.3d 643, 648 (Alaska 2005) (quoting *Smith v. Weekley,* 73 P.3d 1219, 1225 (Alaska 2003)).

**46.** *McQuade,* 901 P.2d at 426 (Alaska 1995) (quoting *Evans v. Evans,* 869 P.2d 478, 482 (Alaska 1994) (internal quotation marks omitted)).

the superior court found that both Michael and Joanna do an acceptable job maintaining a stable, satisfactory environment for Dante before it concluded that "[i]t is desirable to maintain custody in either parent's household." In light of Dante's extended network of family and friends in Fairbanks, the court later made the custody determination in Joanna's favor. The superior court considered circumstances that Dante was likely to encounter in each environment, such as contact with extended family, and showed due consideration for the statutory "stability" factor.

Michael highlights that stability was "a factor that the custody investigator found significantly favored Dante remaining in Michael's primary custody." We have made clear that "a court may reject a custody investigator's recommendations" and carry out a sound analysis that relies on other evidence.[47] In the present case, custody investigator Sponsel testified:

> [T]he best thing a parent can give any child is stability as a foundation for personality growth. That is that you have one set of rules, you have one way of doing things and that's the foundation upon which everything else is built in life.

He later noted that Michael's lifestyle was more structured than Joanna's. Sponsel clarified, "certainly, Ms. Rego's home does have rules and general schedules but it is much, much more lax or much, much more casual." The court also heard testimony that both parents lacked stability in their romantic relationships with others following their divorce. Faced with inconclusive and conflicting evidence, the superior court ultimately granted custody to Joanna. The court was not required to credit Sponsel's testimony, and even if it did credit the testimony, the court was entitled to weigh the stability Michael provides against other factors. The superior court resolved the ambiguities in the record, and its analysis of Dante's stability was not an abuse of discretion.

Michael also argues that the court "overemphasized geographical stability and disregarded the stability Dante had experienced living with his father." Michael correctly points out that we have recognized two components of stability: geographic and relational.[48] However, Michael is incorrect in suggesting that the superior court disregarded relational stability. The court considered the "extended network of family and friends in Fairbanks" an important factor in Dante's stability; a review of the court's opinion suggests that the court was more focused on Dante's relationships in the Fairbanks community than the geographic location itself. We perceive no abuse of discretion in this regard.

### 4. The superior court did not err in its analysis of domestic violence, abuse, neglect, and substance abuse.

Michael argues that the court failed to apply the correct legal standard because it did not address evidence of Joanna's multiple "unsuitable" past relationships, use of alcohol, or indicators of potential child abuse and neglect. Paragraphs (7) and (8) of AS 25.24.150(c) direct the court to consider evidence of domestic violence, abuse, neglect, and substance abuse. However, AS 25.24.150(d) limits "the scope of judicial inquiry [in a best interests determination during a change of custody proceeding] ... to facts directly affecting the child's well-being."[49] We have explained that "instability in relationships [does not] warrant a custody change where the parent's conduct does not

---

**47.** *Ebertz v. Ebertz,* 113 P.3d 643, 647 (Alaska 2005) (affirming custody determination where superior court made reasonable decision based on all the evidence) (citing *Rooney v. Rooney,* 914 P.2d 212, 219 (Alaska 1996)).

**48.** *Meier v. Cloud,* 34 P.3d 1274, 1279 (Alaska 2001) ("Because the child will no longer be able to spend equal time with each parent in ... situations [where a parent relocates to another state], a court considering the child's need for continuity and stability in this context must ex-amine not only the desirability of maintaining geographical continuity, but also the importance of maximizing relational stability.") (citing *West v. Lawson,* 951 P.2d 1200, 1203–04 (Alaska 1998)).

**49.** *West,* 951 P.2d at 1203 (remanding for trial court to consider effect of alternating six-month custody schedule on child) (quoting *S.N.E. v. R.L.B.,* 699 P.2d 875, 878 (Alaska 1985) (internal quotation marks omitted)).

adversely affect the child or the . . . parenting abilities." [50] After considering five of the statutory best interest factors, the superior court concluded: "The other statutory factors do not have significant bearing on this case. There is no domestic violence, abuse, neglect, or substance abuse that has been shown to affect Dante."

Michael draws our attention to evidence that the superior court did not address in detail. The fact that the court did not identify each piece of evidence separately nor consider each in detail is not error because there are other indications that the court considered the evidence that could bear on domestic violence, neglect, and substance abuse, as required under the statute. The court specifically mentioned "Joanna's history of relationships" and the importance of this information to the custody investigator, but the court declined to attribute to this evidence the same significance. Also, despite the custody investigator's concern about Joanna's past relationships, the investigator recommended granting Joanna physical custody of Dante three nights per week and during the summers. The trial court considered the conflicting evidence and purposefully discredited the allegations that there was abuse, neglect, and violence that affected Dante. This is supported by the record, and there is no abuse of discretion.

 Michael argues that the court "misunderstood the concerns raised" about Joanna's past relationships when, at the end of the trial, the court focused its questioning "on the brief period since Michael and Joanna separated." The superior court may consider a parent's past in evaluating current stability and parenting ability, but "a parent's past is not determinative." [51] The superior court's greater attention to the period after Dante was born does not necessarily mean that the court failed to consider Joanna's earlier relationships. While Michael argues that Joanna's past relationships indicate a risk that presently affects Dante and is likely to subject him to abuse in the future,

the superior court was not bound to accept this argument, and the court's rejection of this argument was not clearly erroneous.

5. **The superior court did not err in finding that Joanna has a greater willingness and ability to facilitate Dante's relationship with Michael than Michael has to facilitate Dante's relationship with Joanna.**

 According to Michael, the superior court's finding that "Joanna has the greater willingness and ability to facilitate a close and continuing relationship between Dante and his other parent" is clearly erroneous. Michael notes that there were no allegations at trial that Michael was late for, or obstructed, visits. Michael also pointed to testimony from others who observed him encouraging Dante to speak with Joanna on the phone and his own testimony about how he would like to prepare Dante for calls with his mother on a more fine-tuned schedule. There was, indeed, as Michael points out, testimony showing "the importance Michael placed on fostering Dante's relationship with his mother." But the court was also exposed to conflicting evidence, including evidence that Michael made inappropriate comments about Joanna in front of Dante. Further, the court was exposed to evidence about Joanna's willingness to foster Dante's relationship with Michael and evidence that she has played an active role in maintaining family ties. In light of this evidence, the finding that Joanna was more willing to facilitate contact with the other parent is not clearly erroneous.

Michael's briefing on appeal contrasts his attitude with "Joanna's decision to terminate personal contact between Dante and Michael after she was awarded primary custody." In making this assertion, Michael refers to extremely limited post-trial evidence that is part of the record before us. There was no sworn testimony at the hearing that took place on December 28, 2009; as a result, the superior court did not issue new factual find-

---

**50.** *S.N.E.,* 699 P.2d at 878 (citing *Craig v. McBride,* 639 P.2d 303, 306 (Alaska 1982)); *see also McDanold v. McDanold,* 718 P.2d 467, 470 (Alaska 1986) (affirming grant of custody to father in case where court heard evidence of moth-

er's past relationships and did not consider improper or impermissible factors).

**51.** *McDanold,* 718 P.2d at 470.

ings on the basis of the post-trial hearing. Like the superior court, we are unwilling to rely on the post-trial hearing to change our conclusion that the evidence at trial justified the superior court's determination that Joanna is more willing than Michael to facilitate Dante's contact with the other parent.

## V. CONCLUSION

We AFFIRM the custody-modification order because the superior court applied the correct legal standard in assuming Michael's move to New Jersey would take place and did not abuse its discretion in weighing the best interest factors.

CHRISTEN, Justice, not participating.