NOTICE

*Memorandum decisions of this court do not create legal precedent.  A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

|  |  |  |
|---|---|---|
| CRYSTAL SCHACHLE, | ) | |
| | ) | Supreme Court No.:  S-19400 |
| Appellant, | ) | |
| | ) | Superior Court No.:  3PA-21-01710 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| SETH SCHACHLE, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 2150 – June 17, 2026 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, John C. Cagle, Judge.

Appearances:  John J. Sherman, Sherman Law Office, LLC, Anchorage, for Appellant.  Notice of nonparticipation filed by Kara A. Nyquist, Nyquist Law Group, LLC, Anchorage, for Appellee.

Before:  Borghesan, Henderson, and Pate, Justices.  [Carney, Chief Justice, and Oravec, Justice, not participating.]

I.    INTRODUCTION

A couple divorced and disputed custody of their two children.  The children's mother wished to relocate from Alaska to Missouri for medical treatment and to be closer to her new husband.  She requested primary physical custody of the children

---

\*    Entered under Alaska Appellate Rule 214.

but made clear that she would remain in Alaska if primary custody were denied. The children's father wished to maintain shared physical custody in Alaska.

After trial, the superior court concluded that relocating to Missouri with the mother was not in the children's best interests. It issued a written decision granting the father's request for shared custody in Alaska. Although we can tell from the court's decision that it compared the children's situation should they move to Missouri with their current experience in Alaska, we cannot tell whether the court's forward-looking custody analysis was symmetrical — we cannot discern whether the court weighed the mother's primary custody in Missouri (without the father's presence) against the father's primary custody in Alaska (without the mother's presence).

Because we cannot tell whether the court applied the proper symmetrical analysis in reaching its decision, we hold that it made insufficient findings for appellate review. We therefore vacate its custody order and remand for further analysis.

## II. FACTS AND PROCEEDINGS

### A. Facts

Crystal and Seth Schachle[1] have two children together. Seth also has a son from a previous relationship. The five of them lived together in a house in Wasilla, although Seth's son occasionally stayed with the son's mother.[2]

In early 2021, Crystal was diagnosed with multiple sclerosis, and she soon became dissatisfied with the treatment options in Alaska. Having been told that vitamin D played a role in the condition and hearing of treatment options in Hawaii, she planned a trip there for her and the children. This plan led to an extended argument between the

---

[1] Because the parties have the same last name, we refer to them by first name for clarity.

[2] At the time of the divorce, Seth already had sole custody of his son from a previous relationship. His son turned 18 roughly two years before the final custody decision in this case. This decision only relates to the biological children of both Crystal and Seth.

parties. After Crystal and the children returned from Hawaii, Crystal filed for divorce in June 2021.

### B. Proceedings

#### 1. Interim custody litigation

When Crystal filed for divorce she also filed a motion for interim custody orders, requesting joint legal and primary physical custody of the children. Seth requested shared physical custody. The court held an interim hearing regarding this and other issues over six days in late 2021. It then issued interim orders.

In its interim custody order, the court discussed allegations of domestic violence brought by each of the parties. It found that much of the alleged domestic violence consisted of instances of mutual combat. It also found that both parties had issues with anger. Given these anger issues, the court was troubled by the fact that both parties used corporal punishment on the children. It also noted that both parties engaged in "detrimental misconduct involving the children," including withholding visitation and reviewing divorce paperwork with them.

The court concluded that "the parties [we]re either equally favored or equally disfavored on each of the [best interest] factors." It ordered joint legal custody, as well as shared physical custody on a week-on/week-off schedule. It also ordered both parties to complete an anger management program. And it recommended that both parties complete parenting classes and a course on adverse childhood experiences.

#### 2. Final custody trial

After the court's interim orders, litigation of both custody and property issues continued. The parties' property division and divorce decree were finalized in April 2023, with custody-related issues remaining to be decided.

Around October 2023, Crystal married a man who resided in Missouri. She wished to relocate there with the children, believing she could find more specialized treatment there for her multiple sclerosis. Leading up to the parties' custody trial, Crystal requested sole legal custody and primary physical custody of the children with

the plan of moving to Missouri. She said that Seth could not meet the children's needs and that because she had been the children's primary caregiver, it would be in their best interests to relocate with her. She made clear that if her request for custody in Missouri was denied, she would remain in Alaska.

Seth requested shared legal custody and primary physical custody "so that the children can remain in Alaska during the school year." He also requested a two-week-on/two-week-off custody schedule. He argued that Crystal had manipulated legal processes to prejudice him in the custody litigation and that her move to Missouri related to her own interests and not the children's interests. He argued that her actions demonstrated an unwillingness to facilitate a close and continuing relationship between him and the children.

After a trial held on four days between April and September 2024, the court issued a custody decree denying Crystal's requested physical custody in Missouri and granting Seth's proposed shared physical custody in Alaska. It started by finding that Crystal's proposed move was legitimate as opposed to a "method to thwart the other parent's access to the children." It then discussed the best interest factors that informed its custody decision.

The court found that both parents could meet the children's needs and that both had the ability and desire to take care of the children. Likewise, it found that there was love and affection between the children and each parent. It regarded these factors as neutral. And it acknowledged that it would give the children's preference to move out of state some weight in its analysis.[3]

The court then considered the relative continuity and stability offered by the custody options. It cited our decision in *Meier v. Cloud*, acknowledging the need

---

[3] The children were ages fourteen and ten at the time of the court's decision. The court found that both were old enough to have meaningful preference, particularly the older child.

to examine emotional stability in addition to geographical stability.[4]  It said, "[T]he court is not convinced that either parent has emotional stability of their own, which then trickles down to the children."  Similar to its finding in the context of interim custody proceedings, the court found this factor to be neutral.  The court then noted, however, that while the factor may be neutral on its face, "coupled with the below this factor favors [Seth]."

By "the below," the court seemed to be referring to its discussion of two more factors in its analysis:  first, the parents' respective willingness to facilitate a close and continuing relationship between the children and the other parent; and second, evidence of any domestic violence, child abuse, neglect, or violence between the parents.[5]

Its discussion of the first of these two factors was brief.  It made a finding that Crystal had "been manipulative throughout the litigation in her efforts to thwart [Seth's] relationship with the children."  It thus concluded that "[t]his factor heavily favor[ed]" Seth.

Its discussion of domestic violence was more extensive.  It began by noting that Crystal may have committed domestic violence by accessing Seth's phone without his permission.  It then revisited the findings made in its interim custody order.  There, it had found that the alleged incidents of mutual combat and corporal punishment did not amount to domestic violence because they "did not exhibit a controlling and coercive pattern."  It gave this finding something of a second look:  "Given the evidence during the trial in 2024, this court finds this may not be the case with [Crystal] as the

---

   **4**      34 P.3d 1274 (Alaska 2001).  In its decision, the superior court here quoted the following passage from *Meier*:  "A continuity test centered entirely on the child's geographical stability would always favor placing the child with the non-moving parent.  Yet . . . courts may properly award primary custody to the relocating parent when that parent offers superior emotional stability."  *Id.* at 1279.

   **5**      These align with AS 25.24.150(c)(6) and (7), respectively.

court finds her to be manipulative." The court also noted testimony about Crystal's use of corporal punishment to discipline Seth's son. And it observed that although it had ordered both parents to attend anger management training, only Seth had supplied proof of compliance.

The court concluded that it was not in the children's best interests to relocate to Missouri with Crystal, and it was "in the children's best interest[s] to order joint legal custody and shared physical custody on a [two-week-on/two-week-off] rotation." It also authorized Seth to apply for the children's permanent fund dividends (PFDs) moving forward. It ordered the PFDs to be kept in a dedicated account, and it specified that so long as the children are minors, the funds should not be used without agreement of both parents or court order.

Crystal filed a motion for reconsideration. She argued that the superior court failed to apply a symmetrical analysis to the best interest factors, that it weighed the best interest factors incorrectly, and that it made a clerical error in authorizing Seth to apply for the children's PFDs. The court denied her motion without comment.

This appeal follows.

III. STANDARD OF REVIEW

Trial courts enjoy "broad discretion" when deciding disputes over child custody.[6] However, we review de novo whether the superior court properly conducted a symmetrical analysis.[7] And we review de novo whether the superior court made findings sufficient for appellate review.[8]

---

[6] *Mengisteab v. Oates*, 425 P.3d 80, 85 (Alaska 2018) (quoting *Stephanie W. v. Maxwell V.*, 274 P.3d 1185, 1189 (Alaska 2012)) (internal quotation marks omitted).

[7] *Saffir v. Wheeler*, 436 P.3d 1009, 1013 (Alaska 2019).

[8] *Brett M. v. Amanda M.*, 445 P.3d 1005, 1009 (Alaska 2019).

The superior court also has broad discretion in determining which parent would better serve the children's interests in being responsible for PFD management; we will only overrule such determinations based on abuse of discretion.[9]

## IV. DISCUSSION

Crystal raises two issues on appeal. First, she argues that the superior court failed to conduct the required symmetrical analysis when it decided that the parties should share physical custody of the children in Alaska. Second, she argues that the court abused its discretion when it authorized Seth to apply for the children's PFDs going forward.[10]

Because the superior court's decision lacks clear findings comparing the children's lives in the event they moved to Missouri with Crystal (while Seth remained in Alaska) with their lives in the event they stayed in Alaska with Seth (while Crystal moved to Missouri), we cannot tell whether the court conducted the required symmetrical analysis in reaching its custody decision. We thus vacate the court's physical custody order and remand for the court to conduct and explain its symmetrical analysis. We see no abuse of discretion in the court's PFD-related decision.

### A. The Superior Court Failed To Make Sufficient Findings To Demonstrate That It Conducted The Required Symmetrical Analysis.

During a custody dispute, if a parent plans to relocate so far that shared custody would be impractical, the trial court is required to conduct a two-step analysis.[11] First, the court must determine whether the proposed relocation is legitimate, i.e., "not

---

[9] *Ronny M. v. Nanette H.*, 303 P.3d 392, 407-08 (Alaska 2013) (citing *Helen S.K. v. Samuel M.K.*, 288 P.3d 463, 477 (Alaska 2012)).

[10] Crystal does not otherwise argue that the superior court abused its discretion in making its best interests determination.

[11] *Moeller-Prokosch v. Prokosch (Moeller-Prokosch I)*, 27 P.3d 314, 316 (Alaska 2001) (requiring two-step custody analysis when parent plans to move out of state); *Outwater v. Ahmasuk*, 573 P.3d 46, 53 (Alaska 2025) (requiring same analysis for long-distance in-state moves).

primarily motivated by a desire to make visitation . . . more difficult."[12] Second, the court must weigh the factors listed in AS 25.24.150(c) to decide what custody arrangement is in the children's best interests.[13]

In this second step, the court must assume the move has occurred and compare the children's lives with each parent in their respective locations.[14] If the move is found to be legitimate in the first step, the court cannot hold the move against the relocating parent.[15] But if the move is meant to frustrate visitation, the court must take that into account.[16]

We explained the required analysis in the *Moeller-Prokosch* line of cases.

In *Moeller-Prokosch I*, a mother wished to relocate to Florida with primary physical custody of her child.[17] The superior court granted her primary custody but denied her relocation, requiring that the child live within 65 miles of the father's residence.[18] We said that a "trial court does not have the authority to place restrictions on a parent's ability to relocate," and we remanded with instructions to examine the

---

[12] *Moeller-Prokosch I*, 27 P.3d at 316 (alteration in original) (quoting *House v. House*, 779 P.2d 1204, 1208 (Alaska 1989)).

[13] "The court shall determine custody in accordance with the best interests of the child . . . . In determining the best interests of the child the court shall consider [the nine factors listed here.]" AS 25.24.150(c).

[14] *Mengisteab v. Oates*, 425 P.3d 80, 86 (Alaska 2018) (citing *Moeller-Prokosch v. Prokosch* (*Moeller-Prokosch II*), 53 P.3d 152, 153 (Alaska 2002)).

[15] *Moeller-Prokosch II*, 53 P.3d at 157 (citing *Moeller-Prokosch I*, 27 P.3d at 316); *Rego v. Rego*, 259 P.3d 447, 454 (Alaska 2011) ("[W]e made it clear that the superior court may not hold a legitimate move against a relocating parent.").

[16] *Moeller-Prokosch II*, 53 P.3d at 157; *see also* AS 25.24.150(c)(6) ("In determining the best interests of the child the court shall consider . . . the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child.").

[17] *Moeller-Prokosch I*, 27 P.3d at 315.

[18] *Id.* at 316.

legitimacy of the relocation and consider the best interests of the child "in light of each parent's situation, including relocation."[19] We said that when the "certainty of the relocation is unclear . . . , it is possible that the trial court might need to make two best-interests determinations — one assuming the parent relocates and one assuming the parent does not."[20]

In *Moeller-Prokosch II*, we addressed the superior court's revised findings and order on custody.[21] The superior court expressed resistance to assuming relocation when it did not think relocation was in the child's best interests, and despite its conclusion that the move was "at least partly legitimate," it held the mother's choice to move against her.[22] We concluded that the court failed to comply with our instructions, as it did not clearly address the legitimacy of the move, and it failed "to take the move as a given and determine whether it would be in the best interests of [the child] to be in the custody of his father in Alaska or of his mother in Florida."[23] "Once a parent has shown that the decision to relocate is a legitimate one, then that parent is not required to defend the move a second time by showing that life with that parent is superior to life with both parents in the same city."[24]

Finally, in *Moeller-Prokosch III*, we again examined the superior court's revised findings and order on custody.[25] We further clarified that the continuity and stability best interest factor "commands a comprehensive inquiry into each parent's

---

[19]     *Id.* at 317.

[20]     *Id.* at 317 n.8.

[21]     *Moeller-Prokosch II*, 53 P.3d at 153.

[22]     *Id.* at 156.

[23]     *Id.*

[24]     *Rego*, 259 P.3d at 454 (citing *Moeller-Prokosch II*, 53 P.3d at 156).

[25]     *Moeller-Prokosch v. Prokosch* (*Moeller-Prokosch III*), 99 P.3d 531, 532 (Alaska 2004).

*respective* ability to maintain stable and satisfactory relations between themselves and the child."[26] And "the absence of any discussion of the impact on the child of separation from the out-of-state parent raises some question whether the best interests analysis was based on the assumption that the separation would take place, as we require."[27]

As a practical matter, the only way for us to determine whether a court applied the proper assumptions and engaged with the best interest factors symmetrically is to review the record of its findings and decision.[28] We have previously said that "[a] symmetrical analysis does not require detailed parallel findings on every best interests factor."[29] "[I]t is sufficient if the court's findings provide a clear indication of the factors [that the court] considered important in exercising its discretion or allow[] us to glean from the record what considerations were involved."[30] If, on the other hand, a court fails to make sufficient findings for appellate review, it errs as a matter of law.[31]

Here, we cannot discern whether the superior court conducted a symmetrical analysis, so we remand the matter for further findings. The superior court did not make findings comparing the impact on the children's interests if they moved

---

[26]   *Id.* at 535 (emphasis added) (internal quotation marks omitted).

[27]   *Mengisteab v. Oates*, 425 P.3d 80, 88 (Alaska 2018) (citing *Moeller-Prokosch III*, 99 P.3d at 535).

[28]   *See Smith v. Weekley*, 73 P.3d 1219, 1222 (Alaska 2003) ("In reaching a final child custody determination, a trial court is required to make findings on the various statutory factors which are sufficient to make the basis of its decision susceptible to review." (internal quotation marks omitted)); *see also* Alaska R. Civ. P. 52(a) ("In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon . . . ."). Child custody actions are tried upon findings by the court without the aid of a jury. *See* AS 25.24.150(a), (c), (d).

[29]   *Mengisteab*, 425 P.3d at 87 (citing *Rego v. Rego*, 259 P.3d at 455).

[30]   *Id.* (second alteration in original) (quoting *Caroline J. v. Theodore J.*, 354 P.3d 1085, 1092 (Alaska 2015)) (internal quotation marks omitted).

[31]   *Brett M. v. Amanda M.*, 445 P.3d 1005, 1009 (Alaska 2019).

to Missouri with Crystal while Seth remained in Alaska against the impact on the children's interests if the children remained in Alaska with Seth while Crystal moved to Missouri. And despite the conditional nature of Crystal's move, the court issued a single best-interests determination: that the best interests of the children disfavored a move to Missouri and favored both parents sharing custody in Alaska.[32] It is possible that the court's decision here was the result of two analyses — one assuming Crystal relocated and one assuming she stayed. But because the court did not sufficiently explain its reasoning, it is also possible that, hearing that Crystal would not move without primary custody of the children, the court simply considered and compared the possibilities wherein either (1) the children moved with Crystal to Missouri, or (2) both parents remained in Alaska and shared custody of the children. Without additional findings by the court, we cannot discern what its analysis was.

One example of the lack of apparent symmetry here lies in the court's findings about the continuity and stability best interest factor. As we said in *Mengisteab v. Oates*, "while a custody award is subject to judicial discretion . . . , it is legal error not to conduct the required comprehensive and symmetrical [continuity and] stability analysis."[33] A comprehensive analysis of the continuity and stability factor "requires symmetric consideration of the consequences to [the children] both if [the moving

---

[32] In similar situations, we have indicated a potential need for two best interests analyses. *Moeller-Prokosch I*, 27 P.3d at 316 n.8; *see also Johnson v. Smith*, S-9356, 2001 WL 34818271 at *5 (Alaska Oct. 24, 2001) (unpublished) ("The superior court applied precisely this [*Moeller-Prokosch*] standard . . . . [A]cting on the assumption that [the mother] would move, the court awarded primary custody to [the father]; but at the same time, recognizing the uncertainty of [the mother's] plans, the court also indicated [the mother and father] should share custody of [the child] if [the mother] remained in Alaska.").

[33] 425 P.3d at 87 n.25 (citing *Moeller-Prokosch III*, 99 P.3d at 535).

parent] leaves with [them] and if [the moving parent] leaves without [them]."[34] The trial court here was correct to point out that "courts may properly award primary custody to the relocating parent when that parent offers superior emotional stability."[35] And it made findings related to this factor, that neither parent had superior emotional stability and that Crystal had been manipulative.[36] But it never made the specific findings that we have required in situations like this, findings about what life would be like with one parent — in Alaska with the father but without the mother — versus what life would be like with the other parent — in Missouri with the mother but without the father.[37] While the record does contain testimony from trial that might inform a symmetrical analysis, the occurrence of testimony at trial does not in itself illuminate the legal reasoning behind the court's order.

We recognize that where a parent's desire to move a significant distance depends on maintaining custody of children, it may seem natural to analyze the children's best interests by comparing their experience where they are in the primary custody of the moving parent to their experience where both parents remain in the same location. But such an approach would tend to improperly punish parents who want or need to move for legitimate reasons and who, understandably, would decide not to move

---

[34]    *Id.* at 88 (alterations in original) (quoting *Moeller-Prokosch III*, 99 P.3d at 536).

[35]    *Meier v. Cloud*, 34 P.3d 1274, 1279 (Alaska 2001).

[36]    While the court initially referred to this factor as neutral, it wrapped up its findings by saying that "coupled with the below this factor favors [Seth]." By "the below," it was referencing the factors of willingness to facilitate a close and continuing relationship with the other parent and any history of violence or abuse, both of which disfavored Crystal. Thus, its action of "coupl[ing]" the factors seemed to signal that because Crystal was disfavored on other factors, her inability to provide "superior emotional stability" negated the possibility of the children's relocation with her.

[37]    *See Mengisteab*, 425 P.3d at 89 ("The trial court was required to consider the potential consequences to [the child] both if he were to live in Washington with Mengisteab and if he were to live in Alaska without her . . . .").

if they could not maintain custody. Such an approach would also contradict our precedent. In *Moeller-Prokosch I*, we recognized that "[o]ften the definiteness of a parent's move is uncertain or unclear, especially where the move may depend on the court's custody determination itself."[38] We predicted that courts may be "confronted with a custodial parent who would choose not to move if he or she [could not] maintain custody."[39] And in those situations, we held that after considering the legitimacy of the move, the court must assume that the move has taken place and symmetrically analyze the children's best interests accordingly, perhaps conducting a second analysis to determine what happens if both parents remain in one location.[40]

In the end, the superior court granted shared custody to Seth and Crystal in Alaska, which was consistent with Seth's request. Based on the court's findings and the record before us, we cannot tell whether this decision resulted from a symmetrical analysis or whether it resulted from a comparison of shared custody with both parents in Alaska to primary custody with Crystal in Missouri. We thus vacate the court's order and remand for further analysis and findings.

**B.      The Trial Court Did Not Abuse Its Discretion By Authorizing Seth To Manage The Children's PFDs.**

On remand, the court need not reconsider its ruling on the children's PFDs. Trial courts have broad discretion to determine which parent should manage children's PFDs.[41] Crystal contends that the court abused its discretion by authorizing Seth to manage the PFDs. But in doing so, she oversimplifies the court's ruling and fails to explain why the court's decision on this point was wrong.

---

[38]      27 P.3d 314, 316 (Alaska 2001).

[39]      *Id.*

[40]      *Id.* at 317.

[41]      *Ronny M. v. Nanette H.*, 303 P.3d 392, 407-08 (Alaska 2013) (citing *Helen S.K. v. Samuel M.K.*, 288 P.3d 463, 477 (Alaska 2012)).

In the court's discussion of the PFDs, it ordered that the funds should be kept in a dedicated account. And it said that so long as the children are minors, the funds cannot be used without agreement of both parents or court order. At oral argument, Crystal did not claim that Seth's management of the PFD account would negatively impact the children, just that her management "makes more sense." But "[o]ur role is not to substitute our judgment for the court's discretionary decision."[42] Given the parties' disputes about the PFDs and the court's findings about Crystal's behavior, we cannot say that the court abused its discretion in deciding that this PFD arrangement was in the children's best interests.

## V. CONCLUSION

For the reasons stated above, we VACATE and REMAND the court's custody order, while AFFIRMING its analysis of how the parents should handle the children's PFDs.

---

[42] *Roman v. Karren*, 461 P.3d 1252, 1259 (Alaska 2020).