**Celeste S. MARISCAL, Appellant,**

v.

**Derek A. WATKINS, Appellee.**

**No. S–6808.**

Supreme Court of Alaska.

April 12, 1996.

---

Before RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

### OPINION

RABINOWITZ, Justice.

## I. INTRODUCTION

Pursuant to the superior court's final orders regarding child custody and support, Celeste Mariscal was awarded primary legal custody of her three-year old son Zachory. Mariscal now appeals several aspects of the superior court's orders regarding child support and custody. These include provisions prohibiting the consumption of alcohol and engaging in "inappropriate sexual conduct," the superior court's calculation of Mariscal's Civil Rule 90.3 income, and the contingent visitation schedule fashioned by the superior court.

## II. FACTS & PROCEEDINGS

Mariscal met Zachory's father, Derek Watkins, in Kodiak in 1989. They began living together in August of that year. Zachory was born in December of 1991. Mariscal and Watkins separated and reconciled several times between 1989 and July 1993, when they permanently separated.

In early 1994 Mariscal filed a petition, pursuant to AS 25.20.060, seeking child support and full custody of Zachory. In his answer, Watkins also sought full custody of Zachory. The parties agreed to an interim custody arrangement in which Zachory would live roughly half the week with each of his parents. The parties also agreed to divide evenly Zachory's day care expenses.

The superior court held a trial in the fall of 1994. At trial Mariscal presented evidence of several incidents in which Watkins was verbally abusive to her and engaged in harassing behavior—for example, calling her repeatedly at work and ransacking her apartment. In some of these incidents, either Zachory was present or Watkins actively sought to interject Zachory into the dispute between himself and Mariscal.[1] However,

Melvin M. Stephens, II, Kodiak, for Appellant.

No appearance for Appellee.

---

1. For example, at trial, Mariscal presented an audio tape from her answering machine. During the course of a series of calls, Watkins first accused Mariscal of sleeping with several other men. In the later calls, Watkins put Zachory on the phone and is heard whispering in the back-

Mariscal also testified that Watkins had never physically abused her.

The superior court ordered that a custody investigator be appointed. The investigator prepared a report and testified at trial. The report was based on meetings with both parents with Zachory present, as well as telephonic interviews with various personal and professional references. At trial, the custody investigator testified that the parties' parenting styles complemented each other with Mariscal being more "parental" and Watkins being more of a "buddy" to Zachory. Because Zachory would benefit from significant contact with both parents, the custody investigator recommended that shared physical and legal custody be continued and recommended that the parents enter co-parenting counseling to work out the emotional issues between them.

The superior court awarded sole legal custody of Zachory to Mariscal. As to physical custody, the superior court concluded that "Zachory needs to be exposed to the value systems of both parents so that he can learn and grow to become a responsible adult." However, at trial Watkins testified that he planned to move to the Wasilla area and Mariscal testified that she might relocate to Anchorage sometime in the future. Because of this uncertainty as to the parents' future locations, the superior court fashioned elaborate alternative visitation schedules contingent on whether Mariscal and Watkins lived within one hundred driving miles of each other.

If Mariscal and Watkins live within one hundred miles of each other, the superior court ordered that the visitation schedule established in the interim custody order be continued. Thus, Watkins would have physical custody from 7:45 a.m. on Monday through 5:00 p.m. on Thursday. The parties would split transportation expenses with each being responsible for transporting Zachory once a week. If the parties lived more than one hundred miles from each other but both within Alaska, Watkins would have custody the first week and third weekend of every month. The full cost of transportation would be borne by the parent who moved more than one hundred miles from the other. In either case, the court-imposed schedule would continue until Zachory begins to attend school, at which point the parents were to agree on a new schedule. Finally, if either party moved outside of Alaska then the parties would have to agree on custody arrangements, submitting to mediation if no agreement could be reached.

The superior court's findings of fact and conclusions of law also contained numerous conditions of custody. These included, *inter alia*, (1) that "[n]either party shall expose Zachory to inappropriate sexual behavior"; (2) that "[n]either party shall use or be under the influence of alcohol or illegal drugs while Zachory is in his or her custody"; and (3) that "[n]either party shall drive with the child as a passenger within 12 hours after having consumed alcohol." Additionally, the superior court established a child support order pursuant to Alaska Civil Rule 90.3 and ordered that Watkins reimburse Mariscal for half of certain medical and day care expenses which she previously incurred.

Subsequently, the superior court denied Mariscal's motion to amend and supplement its findings of fact and conclusions of law. The superior court then entered a final judgment in the matter. Mariscal now appeals.

III. *DISCUSSION* [2]

A. *The Superior Court's Restrictions Regarding Alcohol Consumption and Sexual Behavior*

Mariscal challenges three conditions of custody which were included in the superior

---

ground, "Say 'Why don't you want to talk to me?' ... Ask Mama why she doesn't want to talk to you."

Additionally, Mariscal testified that during the course of one argument, Watkins went to his room and put a gun in his pocket. He then picked Zachory up out of his crib and returned to the living room.

**2.** The superior court is vested with broad discretion in making child custody determinations. *Gratrix v. Gratrix*, 652 P.2d 76, 79 (Alaska 1982). This court will reverse the superior court's resolution of custody issues only if this court is convinced that the record shows an abuse of discretion or if controlling factual findings are clearly erroneous. Abuse of discretion is established if the trial court considered improper

court's order. As noted above, the superior court imposed the following conditions regarding the consumption of alcohol: (1) that "[n]either party shall use ... alcohol ... while Zachory is in his or her custody"; and (2) that "[n]either party shall drive with the child as a passenger within 12 hours after having consumed alcohol."

Mariscal first notes that the superior court found "that there is no evidence of alcohol abuse. She's an occasional, moderate, and social drinker. There's no abuse. Her consumption is limited and controlled...." In light of these findings, Mariscal argues that it was an abuse of discretion to impose such stringent limitations on her use of alcohol. She argues that the conditions would prohibit her from even having a single glass of wine with dinner so long as Zachory was in her custody. Further, the conditions are arbitrary because the twelve hour waiting period between having a drink and driving would, for example, prevent her from driving with Zachory in the car the morning after she had a single drink the night before.

As to the superior court's provision that neither parent expose Zachory to "inappropriate sexual behavior," Mariscal argues that the provision is "demeaning" and that it is "entirely inappropriate for a court gratuitously to incorporate such a condition into a custody order in the complete absence of any evidence suggesting the existence of a problem."

■■■ Provisions of a custody award must be supported by findings of fact demonstrating that the superior court properly considered the best interests of the child.[3] We have previously stated that such factors as a parent's sexual conduct are only relevant insofar as "it may be shown to affect the person's relationship to the child."[4] Further, absent evidence of such an effect, we have cautioned trial courts against reference to such factors "[t]o avoid even the sugges-

tion that a custody award stems from a life style conflict between a trial judge and a parent."[5] This caution reflects not only a concern that the superior court consider proper factors in making a custody decision, but also that the superior court not unnecessarily impose its moral values upon a litigant.

These principles are applicable to the superior court's imposition of the questioned conditions of custody. In the instant case, the superior court made no findings with respect to Mariscal's sexual conduct, and specifically found that there was no evidence of alcohol abuse on her part. Additionally, we are of the view that the conditions prohibiting use of alcohol when Zachory is in her custody, as well as driving with Zachory within 12 hours after having consumed alcohol, are unreasonably burdensome and insufficiently related to Zachory's best interests. We therefore conclude that the imposition of these conditions was an abuse of discretion, and therefore all three conditions should be vacated.

### B. *The Superior Court's Civil Rule 90.3 Calculation*

■■■ Mariscal argues that the superior court erred in calculating her Civil Rule 90.3 child support obligation because it included income from a second part-time job. According to Mariscal she took this waitressing job in January 1994 to pay off approximately $7,000 in outstanding bills from Zachory's birth. She testified that although she was working as much as three times a week earlier in the year, she had cut back her schedule recently because at the time of trial, business was slow. Mariscal argues that this amount should be excluded.

However, this issue is not ripe for our consideration. After Mariscal filed this appeal, Watkins moved to Oregon. He does not presently have physical custody of Zachory for at least thirty percent of the year.

---

factors or failed to consider statutorily-mandated factors, or improperly weighted certain factors in making its determination.
*McQuade v. McQuade,* 901 P.2d 421, 426 n. 9 (Alaska 1995) (citations omitted).

**3.** *See Hakas v. Bergenthal,* 843 P.2d 642, 644–45 (Alaska 1992).

**4.** *Britt v. Britt,* 567 P.2d 308, 311 (Alaska 1977).

**5.** *Craig v. McBride,* 639 P.2d 303, 306 (Alaska 1982).

Thus, the parties do not have "shared physical custody" as defined in Civil Rule 90.3(f)(1). As a result, child support is calculated pursuant to Civil Rule 90.3(a) rather than 90.3(b), and Mariscal's Rule 90.3 income is irrelevant for purposes of determining Watkins' child support obligation. The superior court's order provides for this contingency in that it provides that the appropriate section of Rule 90.3 should be applied based on whether the actual physical custody is primary or shared.

Since presently there is not shared physical custody, Watkins' support obligations are calculated according to only his own income. If and when Watkins assumes shared physical custody, then support will be calculated in accordance with 90.3(b) under the order and the court's determination of Mariscal's income will become ripe for review. Because Mariscal's income is irrelevant to a determination of Watkins' support obligations, and may not ever become relevant, we do not reach the issue of whether Mariscal's adjusted annual income should include income from her second job.[6]

### C. The Superior Court's Contingent Visitation Schedule

■ According to Mariscal, Watkins has not indicated when and if he plans to move back to Alaska from Oregon. Because one of the parties has moved outside of Alaska, the superior court order directs the parties to agree on custody arrangements and submit to mediation if they cannot agree. As such, the superior court's detailed and potentially burdensome provisions regarding visitation, which Mariscal challenges, are not presently applicable.

Because none of these challenged provisions is presently operative, we conclude that Mariscal's appeal of these visitation provisions is not ripe for adjudication.[7] Therefore we do not address Mariscal's various challenges to the superior court's visitation provisions.

■ There is one aspect of the superior court's visitation decision which should be addressed at this time. Mariscal argues that in granting Watkins visitation, the superior court gave insufficient weight to the evidence of Watkins' abusive and anti-social conduct.[8] The superior court's findings reveal that the superior court did consider this conduct. However, Mariscal argues that in light of these findings it was an abuse of discretion on the superior court's part to grant Watkins extensive visitation.

Mariscal gives an incomplete picture as to the superior court's assessment of the situation. The superior court noted that there remained a "substantial amount of intranquility ... between Zachory's parents." For Watkins this had manifested itself in extreme jealousy resulting in "yelling and accusations, inappropriate phone messages, and the involvement of Zachory in those instances." However, the problems were not unilateral. The superior court also noted that Mariscal was "immature in how she conducts her relationships" and "uses Zack as a weapon against [Watkins]." Despite these problems between each other, the superior court observed that there was an "excellent relationship between Zachory and each of his parents." Relying on the testimony of the custody investigator, the court found that the parenting styles of Watkins and Mariscal were complementary and that Zachory would benefit by exposure to both. The superior court particularly commended Watkins for his "willingness to learn parenting skills" and his work to develop a support network.

Thus, it appears from the record that most of the problems resulted from the parties' inability to cope with their separation. However, noting that the parties had demonstrated an ability to improve themselves individually, the superior court indicated its hope that the parties could improve their ability to

---

6. *See Bowers Office Prod. v. University of Alaska*, 755 P.2d 1095, 1098–99 (Alaska 1988); *cf. Tulkisarmute Native Community Council v. Heinze*, 898 P.2d 935, 940 n. 7 (Alaska 1995).

7. *See Bowers*, 755 P.2d at 1096; *Lamoreux v. Langlotz*, 757 P.2d 584, 585 (Alaska 1988).

8. In its oral and written findings, the court noted that Watkins had used various controlled substances, had threatened other men who he believed were involved with Mariscal, and had generally been verbally abusive toward Mariscal.

cooperate with each other. The record includes testimony that Watkins loves his child and shows a "genuine concern for Zachory's care and upbringing"; Mariscal's testimony that despite Watkins' jealous behavior, he never physically abused her; and an evaluation from the custody investigator that Watkins was a fit parent. In view of the record, we conclude that the superior court did not abuse its discretion in ordering divided physical custody of Zachory until he reaches school age.[9]

## IV. CONCLUSION

The superior court abused its discretion by including provisions in its final orders prohibiting Mariscal from engaging in inappropriate sexual conduct, prohibiting Mariscal from consuming any alcohol while Zachory is in her custody, and prohibiting Mariscal from driving with Zachory as a passenger within 12 hours after having consumed alcohol. These provisions are VACATED.

The superior court's order that Watkins have substantial visitation with Zachory until he reaches school age was not an abuse of discretion, and is AFFIRMED.

---

9. The superior court concluded that once Zachory reaches school age, his parents are to agree to a new visitation schedule. Because Zachory was almost three years old at the time the superior court entered its December 1994 custody order, it is by its own provisions relatively short-term.