NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JESSIE R., | ) | |
| | ) | Supreme Court No. S-16154 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-06-05225 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| TIMOTHY F., | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1624 – April 5, 2017 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, William F. Morse, Judge.

Appearances: Jessie R., pro se, Anchorage, Appellant. Timothy F., pro se, Anchorage, Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

## I. INTRODUCTION

A mother appeals a child custody modification that required her daughter to split time equally between both parents. The father has a history of domestic violence. We vacate and remand for further proceedings because the superior court effectively awarded the father joint physical custody without first finding that the statutory presumption against joint physical custody for perpetrators of domestic violence had been rebutted. We reject the mother's other challenges to the court's modification.

---

\*      Entered under Alaska Appellate Rule 214.

## II.  FACTS AND PROCEEDINGS

Jessie R. and Timothy F. are the unmarried parents of a 12-year-old daughter.[1]  Jessie has had sole legal and primary physical custody of the daughter since March 2007.  Timothy was initially granted only limited supervised visitation.

In December 2010 the court found that Timothy had a history of domestic violence, triggering a rebuttable statutory presumption that precluded him from being awarded joint physical custody or unsupervised visitation.[2]  Although Timothy did not rebut the presumption against joint physical custody at that time, the court made findings that were sufficient to permit unsupervised visitation and granted Timothy one unsupervised overnight visit every week.[3]

In 2011 the court increased Timothy's visitation to three out of every four weekends, which meant that the daughter would spend around 80% of the time with Jessie and 20% of the time with Timothy.  That 80/20 schedule remained in place until late 2014, when Timothy moved from Anchorage to Dutch Harbor for a job that required him to spend 90 days away from Anchorage followed by 30 days in Anchorage.  The court fashioned an ad hoc schedule and awarded Timothy approximately 26 days of visitation from March through October 2015.  Timothy returned to living in Anchorage in late 2015 after his Dutch Harbor job ended, which is when Jessie filed a motion requesting that the court reinstate Timothy's pre-Dutch Harbor visitation schedule.

---

[1]    We use initials in lieu of the parties' last names to protect the family's privacy.

[2]    *See* AS 25.24.150(g), (j).

[3]    *See* AS 25.24.150(j) (providing findings the court must make before awarding unsupervised visitation to a parent with a history of domestic violence).

Around that same time, an incident occurred between Jessie and the daughter at a hotel. Jessie slapped the then 11-year-old daughter twice in the face and once on her thigh because she and her sister would not stop bickering. In response to this incident, Timothy asked the court to issue a domestic violence protective order against Jessie on the daughter's behalf.

The court held a hearing in November 2015 to address both the requested protective order and Jessie's motion to modify visitation. At the hearing the daughter testified about the hotel incident and said that she "want[ed] more time with [her] dad." Timothy requested custody of the daughter every other week; Jessie said that she wanted to return to the pre-Dutch Harbor 80/20 schedule.

The court refused to grant a domestic violence protective order against Jessie, finding that Jessie had not committed an act of domestic violence because "[Timothy] did not prove by a preponderance of the evidence that [Jessie] was not acting with justification."[4] But the court "found the behavior to be troubling" and ordered that "[neither] parent shall use or allow the use of corporal punishment on [the daughter]."

The court then issued a modified visitation schedule which provided that the daughter would spend every other week with Timothy. The court found that a modification was appropriate primarily because Timothy was now working in Anchorage full time.[5] The court also noted that the daughter "testified that she wanted to spend more

---

[4] *See* AS 11.81.430(a)(1) (providing that a parent's use of "reasonable and appropriate nondeadly force" on a child is "justified" when "reasonably necessary and appropriate to promote the welfare of the child").

[5] *See* AS 25.20.110(a) (requiring that a court first find that a "change in circumstances" has occurred before it modifies a child custody or visitation order).

time with her father." Despite the fact that the daughter would spend equal time with each parent under the new visitation schedule, the order stated that Jessie retained "sole legal and primary physical custody" of the daughter.

Jessie appeals the November 2015 final child custody order.

## III. DISCUSSION

### A. The Superior Court Did Not Find That The Domestic Violence Presumption Had Been Rebutted.

Under AS 25.24.150(g) "[t]here is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody." Once the court has found that a parent has a history of perpetrating domestic violence under this subsection, the court must make a series of additional findings before it can award visitation or custody to that parent. "[T]he court shall allow only supervised visitation . . . conditioned on that parent's . . . successfully completing an intervention program for batterers."[6]

Under AS 25.24.150(j),

> the court may allow unsupervised visitation if it is shown by a preponderance of the evidence that the violent parent has completed a substance abuse treatment program if . . . appropriate, is not abusing alcohol or psychoactive drugs, does not pose a danger of mental or physical harm to the child, and unsupervised visitation is in the child's best interests.

---

[6]     AS 25.24.150(j).

And under AS 25.24.150(h), the presumption may be overcome and sole or joint custody awarded if it is shown

> by a preponderance of the evidence that the perpetrating parent has successfully completed an intervention program for batterers . . . , that the parent does not engage in substance abuse, and that the best interests of the child require that parent's participation as a custodial parent . . . because of other circumstances that affect the best interests of the child.

As we have previously stated, "the rebuttable presumption cannot be ignored by the superior court."[7]   We will reverse a custody determination when the superior court "fail[s] to address AS 25.24.150(g)'s presumption against custody."[8]

In the December 2010 final custody order, the superior court found that Timothy had a history of domestic violence, triggering the statutory presumption under AS 25.24.150(g).  The court did not find that Timothy had overcome the presumption against joint physical custody under subsection .150(h), but the court found that Timothy could be awarded unsupervised visitation under subsection .150(j) and granted him one unsupervised overnight visit every week.

The court then increased Timothy's unsupervised visitation over time, granting him three out of every four weekends in 2011 without making any additional findings.  This culminated with the court's order in November 2015 establishing a custody schedule that granted both parents equal time with the daughter, again without making any additional findings.

It is not clear at what point unsupervised visitation becomes joint physical custody.  But an award of 50/50 custody clearly falls within the meaning of "joint

---

[7]     *Stephanie F. v. George C.*, 270 P.3d 737, 753 (Alaska 2012) (citing *Wee v. Eggener*, 225 P.3d 1120, 1125 (Alaska 2010)).

[8]     *Wee*, 225 P.3d at 1125.

physical custody" for purposes of AS 25.24.150(g), and we caution our courts against using the unsupervised visitation provision of subsection .150(j) to bypass the requirements for allowing custody under subsection .150(h). Because Timothy has a history of domestic violence, the superior court was required to find that Timothy had rebutted the domestic violence presumption before granting him joint physical custody. But the superior court did not make any such finding at the hearing or in its written order, and we find nothing in the record indicating that the superior court made the required finding at an earlier date.[9] We therefore vacate the superior court's order and remand for a determination of whether Timothy has satisfied the rebuttal criteria outlined in AS 25.24.150(h).

We also note that Jessie challenges the superior court's determination that "a change in circumstances require[d] . . . modification" and that the modification was "in the best interests of the child."[10] The superior court found that "there has been a substantial change in circumstances" primarily because Timothy "is now working a typical 40 hour week in Anchorage." It is unclear, however, why this single change justified a new 50/50 custody arrangement, especially given that Timothy had previously lived and worked in Anchorage and had never been granted more than an 80/20 custody schedule.[11] We also note that the superior court did not make any best interests findings on the record. Because we are already remanding for consideration of the domestic

---

[9] Timothy argues that he "met the rebuttable presumption . . . with a 36 week state certified DVIP certification" that he submitted to the court in May 2013. But the certificate is simply evidence of rebuttal, not a rebuttal finding by the superior court.

[10] *See* AS 25.20.110(a).

[11] *See Collier v. Harris*, 261 P.3d 397, 408 (Alaska 2011) (concluding that a change to parent's work schedule was not sufficient to warrant a hearing that would dramatically reduce the other parent's allocation of physical custody).

violence presumption, we do not need to determine whether the superior court's change in circumstances and best interests findings were so deficient as to require reversal. If the superior court enters a new modification order on remand, it should state "on the record its reason for the modification," including any relevant changes in circumstances requiring the modification and why the modification is in the best interests of the child.[12]

## B. The Superior Court Did Not Err As To Other Provisions Of The November 2015 Custody Order.

### 1. Restrictions on the daughter's contact with the paternal grandmother

Jessie challenges a portion of the superior court's order concerning the daughter's contact with Timothy's mother, with whom Timothy lives in Anchorage. In an earlier order, the superior court included as a condition of Timothy's visitation that he could not leave the daughter with her grandmother for more than two hours at a time. In November 2015 Timothy asked the court to make an exception to the two-hour restriction so that the grandmother could take the daughter to a performance of The Nutcracker. The superior court granted this request, but otherwise left the original condition in place.

On appeal Jessie challenges both the original condition and the exception for the Nutcracker performance. She argues that "third parties are not legally entitled to visitation [because she], as a fit parent, [has] the right to determine who . . . contacts [her] child." We conclude that Jessie's argument is unpersuasive because it mischaracterizes a restriction on Timothy's visitation as a grant of third-party visitation to the grandmother.

Alaska recognizes that "special weight must be given to a fit parent's determination as to the desirability of visitation with third parties."[13] But "third-party

---

[12] AS 25.20.110(a).

[13] *Evans v. McTaggart*, 88 P.3d 1078, 1089 (Alaska 2004) (citing *Troxel v.*
(continued...)

visitation" refers to "court-ordered visitation with a child."[14] The superior court did not order that the grandmother receive any special visitation with the daughter. The court instead restricted *Timothy's* visitation. The court provided that "[w]hile [the daughter] is with Timothy, he may not leave [her] with [her grandmother] for more than two hours, except for the Nutcracker excursion." As we have previously held, restrictions on visitation "must be supported by findings of fact demonstrating that the superior court properly considered the best interests of the child."[15] Because Jessie argues that the superior court should have imposed more restrictive conditions on Timothy, she must explain why such restrictions are in the best interests of the child.[16] She has failed to do so here, instead relying on her argument that "as a fit parent" she has "the right to determine who . . . contacts [her] child." We therefore reject Jessie's challenge to the portion of the superior court's order restricting the daughter's one-on-one contact with the grandmother during Timothy's visitation.

### 2. The prohibition on corporal punishment

Jessie also challenges the provision of the superior court's order prohibiting either parent from using corporal punishment. She argues that the court "erred in ordering its personal preference and opinion of discipline upon [the] parties [and] limiting

---

[13]     (...continued)
*Granville*, 530 U.S. 57, 70 (2000)).

[14]     *See Ross v. Bauman*, 353 P.3d 816, 828 (Alaska 2015).

[15]     *Green v. Parks*, 338 P.3d 312, 315 (Alaska 2014) (quoting *Mariscal v. Watkins*, 914 P.2d 219, 222 (Alaska 1996)).

[16]     *See Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011) ("We will set aside the superior court's best interests determination only if the trial court abused its discretion or if the fact findings on which the determination is based are clearly erroneous." (citing *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005))).

the reasonable parental decision making of a fit parent with sole legal custody." This raises a difficult question: When can courts restrict the conduct of a parent with sole legal custody? We have previously reversed restrictions on the conduct of a custodial parent when they were not "supported by findings of fact demonstrating that the superior court properly considered the best interests of the child."[17] Applying only that best interests standard, we conclude that the superior court did not abuse its discretion in this case.[18]

The superior court explained that both parents had "on occasion act[ed] irrationally and in ways that [were] detrimental to [the] child's sense of security and peace and calm" and that "the environment [the] child lives in is probably confusing and stressful to her." The court also found that Jessie had "anger issues" and "impatience issues," and that her decision to slap her daughter, while not a criminal act, "was an exercise of very poor judgment," was "damaging" to the child, and "has to stop." We also note that the superior court observed the daughter's testimony about the incident and was in the best position to determine the effect that Jessie's use of corporal punishment was having on the daughter. We therefore conclude that the superior court did not abuse its discretion in finding that a prohibition on corporal punishment was in the daughter's best interests.

We acknowledge that some states require more than a "best interests" finding to restrict the conduct of a custodial parent.[19] We have not previously considered

---

[17] *Green*, 338 P.3d at 315 (quoting *Mariscal*, 914 P.2d at 222).

[18] *See Rego*, 259 P.3d at 452.

[19] *See* COLO. REV. STAT. ANN. § 14-10-130(1) (West 2015) (providing that courts may impose "specific limitation[s]" on the custodial parent's authority only if in the absence of such limitations "the child's physical health would be endangered or the child's emotional development significantly impaired").

whether to adopt such a rule in Alaska, but Jessie has not adequately addressed that issue in her brief, and we therefore do not reach that question here.[20]

### 3. Jessie's other arguments

Jessie raises several other issues which we only address briefly. First, she challenges the superior court's instruction allowing Timothy to keep the daughter after he picked her up from daycare on November 9, 2015, even though the daughter was supposed to be with Jessie that day. The superior court was apparently attempting to avoid an unnecessary confrontation between Timothy and the police, and it held a telephonic hearing the very next day to resolve this issue without police involvement. After that hearing, the court immediately issued an interim child custody order stating that Jessie should pick the daughter up that evening and that the parties should return to their previous custody/visitation schedule. Because Jessie would be entitled to no relief even if she prevailed on this issue, we find this issue moot.[21]

Jessie next challenges the superior court's "statement that [it] will order where [the daughter] goes to school." But the superior court did not issue any such

---

[20]     The extent of Jessie's legal analysis is the conclusory assertion that the court's prohibition on corporal punishment "violates [her] parental right to reasonably discipline [her] child under AS 11.81.430(a)." The statute she cites is the subsection of Alaska's criminal code precluding criminal liability for reasonable and appropriate corporal punishment. *See* AS 11.81.430(a)(1) (providing that a parent's use of "reasonable and appropriate nondeadly force" on a child is "justified" when "reasonably necessary and appropriate to promote the welfare of the child"). Although the legality of the prohibited conduct is of some relevance, neither the rights of parents and children nor the scope of judicial authority in child custody cases can be defined solely by reference to Alaska's criminal code.

[21]     *See R.I. v. C.C.*, 9 P.3d 274, 278 (Alaska 2000).

order. Because Jessie only challenges a statement, not a final judgment, it is not appropriate to address that issue in this appeal.[22]

Jessie also challenges the court's failure "to include all previously ordered visitation contingencies" in its new child custody order. But she does not explain what contingencies were omitted or provide any legal support for her argument. We therefore conclude that this issue was inadequately briefed and decline to consider it.[23]

Lastly, Jessie argues that Timothy should not have unsupervised visitation. But the court first awarded Timothy unsupervised visitation in 2010. If Jessie believes that Timothy should no longer have unsupervised visitation, she should make that argument in a motion to modify the custody arrangement.[24] She did not make that argument in the underlying motion, and we therefore do not consider that argument here.

## IV. CONCLUSION

For the reasons explained above, we VACATE the superior court's order and REMAND for further proceedings.

---

[22]    *See* Alaska R. App. P. 202(a).

[23]    *See Iverson v. Griffith*, 180 P.3d 943, 946 n.12 (Alaska 2008) ("[W]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal." (quoting *Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n.3 (Alaska 1991))).

[24]    *See* AS 25.20.110(a).