NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| BENJAMEN J., | ) | |
| | ) | Supreme Court No. S-17348 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-14-02821 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| HEATHER J., | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1826 – April 21, 2021 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Bethany S. Harbison, Judge.

Appearances: Kristin J. Farleigh, Gazewood & Weiner, P.C., Fairbanks, for Appellant. Moira K. Smith, Anchorage, and Christopher J. Slottee, Holland & Knight LLP, Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

## I.  INTRODUCTION

A wife filed for divorce from her husband; they have two children. The husband's history of domestic violence triggered a statutory presumption against awarding him custody, and he sought to rebut the presumption at trial. Without explicitly stating that the husband's rebuttal effort was unsuccessful, the court applied

---

\*  Entered under Alaska Appellate Rule 214.

the presumption to award the wife custody of the children. The court also required the husband to complete both a batterers' intervention program and a substance abuse program before being eligible for visitation, and it awarded the wife substantial attorney's fees.

The husband appeals the implicit conclusion that he did not rebut the domestic violence presumption, the visitation conditions, and the attorney's fees award. We affirm the superior court's custody- and visitation-related rulings. But we remand for clarification of the attorney's fees award.

## II.   FACTS AND PROCEEDINGS

### A.   Background Facts And Hearings

Benjamen and Heather J. married in 2008 and have two children.[1] Benjamen admits to repeatedly committing acts of domestic violence against Heather during the marriage. In 2014 Heather filed for divorce in Fairbanks and took interim custody of the children. Before trial the superior court repeatedly sanctioned Benjamen for failing to comply with court orders.

The superior court held evidentiary hearings in 2017 and 2018, focusing on four issues: Benjamen's history of domestic violence, drug use, and personal therapy sessions, and Heather's attorney's fees. Benjamen and Heather testified consistently about several instances of domestic violence he had committed against her. Heather testified to seeing Benjamen use marijuana and use Xanax for off-label purposes. Social media photos suggesting Benjamen used cocaine and drank heavily were admitted as evidence. Benjamen contested most of the evidence about his alleged drug use and asserted that recent drug tests established his sobriety; his friend testified that Benjamen is not a "big partier."

---

[1]   We use an initial in place of the last name to protect the parties' privacy.

Heather presented three noteworthy witnesses. First, the children's counselor testified that both children experience symptoms of trauma caused by violence at home. Second, a domestic violence expert testified that Benjamen repeatedly "minimized" his use of violence and that a risk assessment suggests a greater than 70% chance Benjamen will assault a partner within five years. Third, a child custody investigator testified about his interviews with the children and his custody report. The investigator believed that Benjamen should not have unsupervised visits with the children and recommended that Benjamen complete both a batterers' intervention program and an outpatient substance abuse program. The investigator's report incorporated a 2016 evaluation concluding Benjamen has a clinical substance abuse disorder.

Benjamen's personal therapist testified about her work with Benjamen over approximately 150 individual therapy sessions between 2015 and 2018. The therapist testified that she used dialectical behavior therapy[2] and a domestic violence curriculum to address Benjamen's anger management and stress, concluding that he had effectively worked through many of his struggles and made more progress than 95% of her patients. The superior court acknowledged at one point in the trial that Benjamen "is unusually able to take responsibility for [his] conduct."

The parties briefly addressed attorney's fees at the end of the hearings. Heather's recent tax documents showed yearly earnings under $5,000, and she explained her limited work history and new job as a teacher's aide; Benjamen's tax documents showed pre-tax earnings over $100,000. Heather presented evidence of approximately $33,000 in fees owed to one firm and approximately $4,500 owed to another firm;

---

[2] The therapist described "dialectical behavior therapy" as "teach[ing] interpersonal effectiveness skills, emotional regulation skills, . . . . [a]nd distress tolerance skills."

Benjamen already owed her almost $9,000 in fees from pre-trial sanctions. During trial Benjamen's attorney suggested that some of Heather's alleged attorney's fees were incurred during grandparent visitation proceedings, double-billed, or already paid by Benjamen. Benjamen's attorney proposed addressing attorney's fees through post-trial motion practice.

## B. Superior Court's Decision

The superior court made several relevant factual findings, including that Benjamen had "subjected Heather to repeated and serious acts of domestic violence." The court also found that "Benjamen [had] subjected the children to abuse or neglect by assaulting their mother in front of them, yelling at them, and by hitting [one child]." The court acknowledged that both children suffer from mental health problems "caused by exposure to domestic violence in their home."

The superior court further found that Benjamen "has a history of drug and alcohol use . . . [that] has had negative consequences for him, Heather, and the children, including promoting a loss of self-control and irrational and controlling behavior." But the court found "no evidence that substance abuse by either parent directly affect[ed] the well-being of the children" at the time of trial.

Based primarily on these findings, the superior court awarded Heather sole legal custody and primary physical custody of the children and outlined a plan for Benjamen to earn unsupervised visits; the court did not explicitly address whether Benjamen's therapy rebutted the statutory presumption against awarding custody to a violent parent. The court ordered Benjamen to complete a specific batterers' intervention program in Fairbanks and a substance abuse program before any visitation.

The superior court also awarded Heather attorney's fees. It held that "[b]ecause of the disparity in earning capacity, Benjamen shall be responsible for paying approximately 2/3 of her attorney's fees." The court found that Heather "incurred over

$40,000 in legal fees," and it ordered "Benjamen [to] pay Heather $30,000 for his portion of her attorney's fees."  The court further said that "Benjamen's unreasonable conduct and his bad faith actions . . . resulted in the extremely high attorney's fees."

Benjamen filed a motion for reconsideration, which the court denied after briefing by both parties.  He appeals.

## III.    DISCUSSION

Benjamen's appeal focuses on three issues:  application of the domestic violence presumption in AS 25.24.150(g), the visitation conditions, and the attorney's fees award.  We address these in turn.

### A.    The Superior Court Properly Applied The Domestic Violence Presumption To Award Heather Custody.

Alaska Statute 25.24.150(g) creates a rebuttable presumption that a court may not award custody to a parent with a history of domestic violence.[3]  A parent with a history of domestic violence may rebut this presumption in different ways.[4]  The clearest way is by proving three elements by a preponderance of evidence:  (1) the violent parent has successfully completed a batterers' intervention program, if reasonably available; (2) the violent parent does not engage in substance abuse; and (3) it is in the child's best interests for the violent parent to participate as a custodial parent.[5]  We have

---

[3]    The statute provides:  "There is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child."

[4]    AS 24.24.150(h) (outlining statutory requirements for rebuttal); *Stephanie F. v. George C.*, 270 P.3d 737, 753 (Alaska 2012) ("We have not held that there is only one way to overcome the presumption against awarding custody to a [violent parent].").

[5]    AS 25.24.150(h) provides:

(continued...)

suggested that a parent may rebut the presumption by completing appropriate personal therapy instead of a traditional batterers' intervention program.[6]

Benjamen unpersuasively argues that the superior court made two mistakes in applying the presumption. He first argues that the court's findings are inadequate because they do not specifically address whether he rebutted the presumption with the evidence of his personal therapy sessions. We review the adequacy of "fact findings to determine whether they [either] give a clear indication of the factors considered important by the trial court or allow us to determine from the record what considerations were involved."[7] The court must "articulate the reasons for its holding where those

---

[5]     (...continued)
A parent has a history of perpetrating domestic violence under (g) of this section if the court finds that, during one incident of domestic violence, the parent caused serious physical injury or the court finds that the parent has engaged in more than one incident of domestic violence. The presumption may be overcome by a preponderance of the evidence that the perpetrating parent has successfully completed an intervention program for batterers, where reasonably available, that the parent does not engage in substance abuse, and that the best interests of the child require that parent's participation as a custodial parent because the other parent is absent, suffers from a diagnosed mental illness that affects parenting abilities, or engages in substance abuse that affects parenting abilities, or because of other circumstances that affect the best interests of the child.

[6]     *Stephanie F.*, 270 P.3d at 754 (asking superior court to address on remand whether parent's "counseling was sufficient to rebut the statutory presumption").

[7]     *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 137 (Alaska 1997).

reasons are not apparent from the record"[8] but does not need to "make findings on every factual assertion raised by the parties."[9]

It is clear from the order and the record that the superior court applied the presumption after considering Benjamen's personal therapy in the context of his drug use and history of domestic violence. Extensive testimony focused on these issues, and the order explicitly addresses his domestic violence, drug use, and other best interests factors. The court's "reasons for its holding . . . are . . . apparent from the record."[10] Benjamen did not rebut the presumption because he repeatedly committed acts of domestic violence, his drug use harmed his children, and his therapy was not as valuable as a traditional batterers' intervention program. Benjamen cites no case in which we have overturned a custody ruling for failing to articulate that a violent parent did not rebut the presumption when the court awarded custody to the other parent. We therefore conclude that the court's findings are adequate, and it did not err by failing to expressly articulate that Benjamen did not rebut the presumption.

Benjamen next argues that the superior court's implicit conclusion that his approximately 150 outpatient therapy sessions were insufficient to rebut the presumption was clear error. A factual finding is clearly erroneous if review of the entire record leaves us "with a definite and firm conviction that a mistake has been made."[11]

Benjamen cites our suggestion in *Stephanie F. v. George C.*[12] that a parent

---

[8] *Id.* (quoting *Bird v. Starkey*, 914 P.2d 1246, 1249 (Alaska 1996)).

[9] *Berry v. Berry*, 277 P.3d 771, 779 (Alaska 2012).

[10] *Borchgrevink*, 941 P.2d at 137 (quoting *Bird*, 914 P.2d at 1249).

[11] *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011).

[12] 270 P.3d 737 (Alaska 2012).

might have rebutted the presumption by completing personal therapy instead of a traditional batterers' intervention program.[13] But that case is factually distinguishable in four important ways. First, in *Stephanie F.* the violence was "situational" and "unlikely to reoccur."[14] But Benjamen admits to repeated acts of violence, and research-backed evidence suggests he likely will be violent in the future. Second, in *Stephanie F.* the husband's therapist testified that a traditional batterers' program "could be more detrimental than productive,"[15] but in this case an expert testified that a traditional program would be more valuable than one-on-one therapy. Third, no evidence suggested that the violent parent in *Stephanie F.* had a history of drug abuse, but both a substance abuse evaluation and Heather's testimony suggested Benjamen has a history of drug abuse.[16] Fourth, in *Stephanie F.* the superior court concluded that it was in the child's best interests for the violent parent to have custody, but in this case the court concluded that no best interests factor favored awarding Benjamen custody.[17] This case does not resemble *Stephanie F.* And even if it did, we did not hold in *Stephanie F.* that a violent parent always may rebut the presumption through personal therapy.[18]

Benjamen essentially argues that the superior court believed the wrong witnesses on the factual issues supporting its legal conclusion that he did not rebut the presumption. But as noted above, each of the court's relevant factual findings is

---

[13]    *Id.* at 754.

[14]    *Id.*

[15]    *Id.*

[16]    *See id.* at 740-45 (not mentioning drug use).

[17]    *Id.* at 739.

[18]    *See id.* at 754.

supported by testimony, and factual findings are entitled to "particular deference" when based primarily on oral testimony.[19] We accordingly are not left with a "definite and firm conviction" that a factual error has been made.[20] The court therefore did not clearly err in finding that Benjamen did not rebut the domestic violence presumption.

**B.     Visitation**

Benjamen also challenges the superior court's visitation conditions. The court outlined a multi-step plan Benjamen may follow to earn unsupervised visitation. But before any visitation, Benjamen must successfully complete both a specific batterers' intervention program in Fairbanks and a substance abuse treatment program. Benjamen challenges both conditions. Because visitation conditions are left to the broad discretion of the superior court if they are in a child's best interests,[21] we reject Benjamen's arguments and affirm both visitation conditions.

**1.     The superior court did not clearly err or abuse its discretion by requiring Benjamen to complete the batterers' intervention program before visitation.**

Benjamen argues that he should not be required to complete the batterers' intervention program before visitation. When the court applies the domestic violence presumption it "shall allow only supervised visitation . . . conditioned on . . . participating in and successfully completing an intervention program for batterers . . .

---

[19]     *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005) (quoting *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001)).

[20]     *See Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011).

[21]     *Joy B. v. Everett B.*, 451 P.3d 365, 374 (Alaska 2019) ("The trial court has broad discretion when formulating conditions on a parent's exercise of visitation."); *Yelena R. v. George R.*, 326 P.3d 989, 1002 n.36 (Alaska 2014) ("[W]here a trial court makes the required findings, whether those findings support a particular restriction on visitation is left to the trial court's discretion.").

where reasonably available."[22] We have interpreted the phrase "where reasonably available" elsewhere in the statute as "the legislature's recognition and acknowledgment that such programs may not be available throughout the state."[23] If a traditional batterers' intervention program is not "reasonably available," a court may consider comparable, alternative paths to visitation.[24]

Benjamen first argues that the superior court clearly erred by finding that a traditional batterers' intervention program is reasonably available to him even though he travels to remote parts of Alaska for work. Witness testimony suggests that traditional intervention programs are reasonably available near both Fairbanks and Anchorage, two places Benjamen apparently has lived since this matter began. And Benjamen presented no evidence that either the location of his home or his work schedule makes him unable to attend a traditional program. He merely asserts that he is unable to complete "a traditional batterer's intervention program as a result of his work schedule" with no evidence beyond a general assertion that he is away "for months out of the year." Given Benjamen's minimal evidence, the court's finding is not clearly erroneous.[25]

Benjamen also argues that the superior court abused its discretion by requiring him to attend a specific batterers' intervention program in Fairbanks rather than a more conveniently located program near his apparent new home in Anchorage. But

---

[22]     AS 25.24.150(j).

[23]     *Stephanie F.*, 270 P.3d at 752.

[24]     *See id.* (concluding batterers' intervention programs were not intended to be only means of overcoming domestic violence presumption); *id.* at 754 (noting "there is more than one way to overcome the rebuttable presumption").

[25]     *See Rego*, 259 P.3d at 452 ("We will conclude that a factual finding is clearly erroneous if, based on a review of the entire record, the finding leaves us with a definite and firm conviction that a mistake has been made . . . .").

Benjamen did not point to meaningful evidence that he actually is unable to attend the program in Fairbanks. And trial testimony supports the conclusion that Benjamen's completion of the Fairbanks batterers' intervention program would be in his children's best interests. We will not find an abuse of discretion based only on a litigant's bald assertion that a visitation condition is inconvenient.[26] The court therefore did not abuse its discretion by requiring Benjamen to complete the specific batterers' intervention program. If Benjamen wants to modify his visitation plan to allow a traditional batterers' intervention program in Anchorage, he may seek to do so in the superior court.[27]

Benjamen finally argues that the superior court abused its discretion by requiring him to complete a batterers' intervention program *before* beginning visitation. But when a court applies the domestic violence presumption it "shall allow only supervised visitation . . . conditioned on . . . participating in and *successfully completing* an intervention program for batterers . . . where reasonably available."[28] In an unpublished decision, we relied on the statute's plain meaning to affirm a superior court that similarly required a violent parent to complete a batterers' intervention program before visitation.[29] The court thus did not abuse its discretion by requiring Benjamen to complete a batterers' intervention program before visitation.

---

[26]     *See Matthew P. v. Gail S.*, 354 P.3d 1044, 1050 (Alaska 2015) (finding no abuse of discretion in custody determination when father's "scant evidence" included only his own self-serving testimony). Benjamin cites no sworn testimony supporting the proposition that he is unable to attend a batterers' intervention program in Fairbanks.

[27]     *See* AS 25.20.110 (describing visitation plan modification).

[28]     AS 25.24.150(j) (emphasis added).

[29]     *Frederico A. v. Francisca A.*, No. S-15677, 2016 WL 7494854, at *5 (Alaska Dec. 28, 2016).

## 2.	The superior court did not clearly err or abuse its discretion by requiring Benjamen to complete a substance abuse program before visitation.

Benjamen argues that he should not be required to completed a substance abuse program before visitation.  The superior court found that Benjamen "has a history of drug and alcohol use" and that "[h]is drug use has had negative consequences for him, Heather, and the children, including promoting a loss of self-control and irrational and controlling behavior."  But it also found that "there is no evidence that substance abuse by either parent directly affects the well-being of the children at this time."

Benjamen again essentially argues that the superior court's factual findings are clearly erroneous because it believed the wrong witnesses' testimony about his drug use.  But the record supports the finding that Benjamen "has a history of drug and alcohol use . . . [that] has had negative consequences for him, . . . including promoting a loss of self-control and irrational and controlling behavior."  Heather testified about Benjamen's violence and about seeing Benjamen use multiple illegal substances and illegally grow marijuana; a custody investigator's report noted that he has been diagnosed with a substance abuse disorder; and the investigator's report recommended that Benjamen complete a substance abuse program.  Although Benjamen and his friend testified that Benjamen's current drug use is not problematic and that Benjamen has passed some drug tests, this evidence does not definitively establish his ongoing sobriety.  The court's decision is entitled to "particular deference" when based on oral testimony.[30]  We therefore affirm the court's factual findings on Benjamen's substance abuse.

Alaska law explicitly requires courts to consider evidence that substance abuse "directly affects the emotional or physical well-being of the child" when assessing

---

[30]	*Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005) (quoting *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001)).

a child's best interests.[31]  We thus have upheld substance-abuse-related visitation restrictions.[32]  As discussed above, the court found that Benjamen's past substance use has had "negative consequences for . . . the children, including promoting a loss of self-control and irrational and controlling behavior."  Although the court also found "no evidence that substance abuse" was directly affecting the children at the time of trial, we believe that merely reflected the fact that Heather had ongoing, sole interim custody of the children for several years before trial.  We therefore affirm this visitation condition.[33]

## C.    Attorney's Fees Award

Benjamen challenges the superior court's attorney's fees award to Heather. The superior court found that Heather incurred "over $40,000 in legal fees" and directed Benjamen to pay "approximately 2/3" of those fees "[b]ecause of the disparity in earning capacity."  The court found that this equaled $30,000.

"The superior court has broad discretion in awarding attorney's fees in a divorce action, and we review any award for abuse of discretion."[34]  Benjamen argues that the court made three errors in exercising its discretion.[35]  But because we cannot

---

[31]    *See* AS 25.24.150(c)(8).

[32]    *Pasley v. Pasley*, 442 P.3d 738, 754-55 (Alaska 2019) (affirming monthly drug testing and new substance abuse evaluation as visitation conditions); *Fardig v. Fardig*, 56 P.3d 9, 14-15 (Alaska 2002) (holding parent's drug use supported supervision of visitation until sobriety demonstrated).

[33]    *See Yelena R. v. George R.*, 326 P.3d 989, 1002 n.36 (Alaska 2014) ("[If] a trial court makes the required findings, whether those findings support a particular restriction on visitation is left to the trial court's discretion.").

[34]    *Limeres v. Limeres*, 320 P.3d 291, 296 (Alaska 2014).

[35]    Benjamin first argues that the superior court enhanced the attorney's fees award for vexatious conduct without following the correct process.  He next argues that
(continued...)

fully understand the basis for the amount of the superior court's attorney's fees award, we cannot fully assess Benjamen's arguments. Without addressing Benjamen's core substantive arguments, we remand for further explanation of the attorney's fees award.

Heather submitted evidence of fees owed to two law firms: a bill from one firm for approximately $33,000 and a lien from another firm for approximately $4,500. Based on the record, her documented fees total approximately $37,500, well below the "over $40,000" value the court seemingly calculated. But Benjamen owed Heather almost $9,000 for attorney's fees as part of several pre-trial sanction awards. It is possible that the final award subsumed these penalties. But the superior court's math is unclear, and the parties disputed the math at argument to us. The award was not reduced to a final judgment that clarifies the issue.

Does Benjamen owe Heather the pre-trial sanctions in addition to the $30,000 award? Had Benjamen already paid some of Heather's fees, as he argued at trial? Questions remain that the record and the court's decision do not answer. We therefore remand the attorney's fees award for further explanation and revision, if necessary, with or without further briefing from the parties on Benjamen's objections.

## IV.   CONCLUSION

We AFFIRM the superior court's application of the domestic violence presumption and conditions on visitation. We REMAND the attorney's fees award for further clarification. We do not retain jurisdiction.

---

[35]     (...continued)
the court improperly failed to address certain objections to specific fees. He further argues that the court should not have awarded attorney's fees without allowing him to present further objections through motion practice. We note that Benjamen does not argue that Heather is not entitled to any attorney's fees; the court's decision to award Heather some fees based on a disparity in earning capacity is not at issue.